[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-14031
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 11, 2012
JOHN LEY
CLERK

D.C. Docket No. 1:09-cv-01247-CCH

PATRICK LUCAS,

Plaintiff-Appellant,

versus

U.S. ATTORNEY GENERAL,
in his official capacity as head of the
Federal Bureau of Prisons, U.S. Department of Justice,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(May 11, 2012)

Before TJOFLAT, EDMONDSON and FAY, Circuit Judges.

PER CURIAM:

Patrick Lucas appeals the magistrate judge's grant of summary judgment in favor of Eric H. Holder, Jr., in his official capacity as the head of the Federal Bureau of Prisons ("the government"), in Lucas's employment discrimination action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a(a), and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-16.[1]  On appeal, Lucas argues that the government's legitimate, nondiscriminatory reasons for promoting another candidate rather than Lucas were pretextual.  For the reasons set forth below, we affirm the magistrate's grant of summary judgment to the government.

I.

Lucas, an employee of the Bureau of Prisons, was promoted to the position of correctional counselor in 1989.  In 2004, he moved to Atlanta to live near elderly relatives.  No correctional counselor positions were available in Atlanta at the time, so he accepted a position as a correctional officer.  Later, a correctional counselor position became available in Atlanta, and he applied for the position, which would have been a promotion.  Laura McDonald, who was younger than Lucas, also applied for the position.  Loren Grayer, then-warden of the penitentiary in Atlanta, selected McDonald for the position.  Lucas was 53 years

---

[1] The parties consented to have the case proceed before a magistrate judge.

2

old at the time. Lucas ultimately filed this lawsuit, alleging that his ADEA and Title VII rights were violated when McDonald, rather than Lucas, was selected for the correctional counselor position.

The government filed a motion for summary judgment, conceding, for the purpose of resolving its motion, that Lucas could establish a *prima facie* case of age or gender discrimination. Nonetheless, the government argued, summary judgment was appropriate because Grayer had a legitimate, nondiscriminatory reason for promoting McDonald rather than Lucas: namely, Grayer felt that McDonald was doing the best possible job in her pre-promotion position, as reflected in her "outstanding" performance rating. The government asserted that Lucas could not show that Grayer's reason for promoting McDonald was a pretext for discrimination. The government submitted a number of exhibits with its motion for summary judgment.

According to the exhibits, a correctional counselor was responsible for, among other duties, interviewing new inmates and serving as an expert on inmate personal property and trust funds. A correctional counselor was required to have at least one year of specialized experience. Lucas stated in his application for the position that he had worked as a correctional counselor from 1989 until 2004, he had a bachelor's degree in sociology, and his last performance rating had been

"exceeds." According to McDonald's application for the position, she had experience in areas such as special housing unit policies, inmate counseling and dispute resolution, and inmate discipline; she had taken some community college and university classes; and her most recent performance rating was "outstanding." Lucas declared in an affidavit that his coworker, Kenneth Houston, heard Grayer state that he did not want to choose anyone in "retirement mode" for the position.

Grayer testified in a deposition that, when a position, such as the correctional counselor position, became available, interested applicants first submitted their applications to a central staffing unit. That unit would then send Grayer a list of the eligible candidates and their application packets. In making his selection, Grayer considered the application packets, the applicants' current performance evaluations, and the recommendation of the associate warden. In the employee evaluation rating scale, "outstanding" was ranked higher than "exceeds." The performance evaluation was the most important factor because Grayer wanted to select the best possible person for each position. That is, when Grayer had to consider comparable applicants, he wanted to choose the individual doing the best possible job at that point in the individual's career. Grayer looked for an individual with potential in the future and who was "the cream of the crop." In this case, Grayer testified, Lucas and McDonald had the same department head.

Their department head told Grayer that McDonald was a positive employee, a team player, and had received an outstanding evaluation. Lucas, on the other hand, was described by the department head "as probably an average-to-good employee."

Grayer further testified that any comments he made about employees in retirement mode referred to his personal philosophy that, if, for example, he started focusing on retirement rather than on doing his job, he would know that it was time for him to retire. He did not expect others to make career decisions using his philosophy. Grayer did not think that Lucas was focused on retirement, because he did not think that Lucas would have applied for the promotion if he was focused on retirement. Finally, a college degree was not required to be a correctional counselor.

Lucas argued in response that Grayer's reasons for hiring McDonald, such as looking for an individual with potential in the future, were subjective and discriminatory toward candidates nearing the Bureau of Prisons's mandatory retirement age of 57. Additionally, Lucas's superior qualifications as compared to McDonald's qualifications showed that Grayer's reasons for promoting McDonald were pretextual.

In support of his response, Lucas submitted Kenneth Houston's deposition

5

and affidavit. Houston stated that he applied for the correctional counselor position and that he spoke with Grayer about the position. During that conversation, Grayer made a comment "about some of the staff being in retirement mode." Grayer did not, however, state that he would not promote anyone in retirement mode. Houston believed that Grayer was referring to "older counselors" because there had been problems with the older counselors completing their work.

Following a reply from the government, the magistrate granted the government's motion for summary judgment. The magistrate first noted that the government conceded that Lucas established a *prima facie* case of discrimination. Second, the government had shown a legitimate, nondiscriminatory reason for promoting McDonald rather than Lucas. Specifically, McDonald was rated "outstanding" on her most recent evaluation, while Lucas had been rated "exceeds." Third, the magistrate found that, viewing the evidence in the light most favorable to Lucas, Lucas had not shown that the government's legitimate, nondiscriminatory reason was pretextual.

II.

We review a district court's grant of summary judgment *de novo*, "applying the same legal standards as the district court." *Chapman v. AI Transport*, 229 F.3d

6

1012, 1023 (11th Cir. 2000) (*en banc*).  "[S]ummary judgment is appropriate if the evidence before the court shows that there is no genuine issue as to any material fact."  *Id.* (quotation omitted).  "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor."  *Id.* (quotation omitted).  In making this determination, we "make all reasonable inferences in favor of the" nonmoving party.  *Id.* (quotation omitted).

The federal government is prohibited from discriminating against an employee on the basis of age (ADEA) or sex (Title VII).  29 U.S.C. § 633a(a) (ADEA); 42 U.S.C. § 2000e-16 (Title VII).  A plaintiff bears the burden of proving unlawful employment discrimination.  *Hinson v. Clinch Cnty.*, 231 F.3d 821, 827 (11th Cir. 2000).  Under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), framework, a plaintiff may rely upon circumstantial evidence to prove his ADEA and Title VII claims.  *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1174 (11th Cir. 2010) (Title VII); *Chapman*, 229 F.3d at 1024 (ADEA).  *McDonnell Douglas* established a three-step process: first, a plaintiff must "establish a *prima facie* case of discrimination"; second, the defendant "must articulate a legitimate, nondiscriminatory reason for the challenged employment action"; and third, the plaintiff must proffer evidence

7

"sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Chapman*, 229 F.3d at 1024 (quotation omitted).

To meet the requirements of the pretext step, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that the employer's legitimate, nondiscriminatory reason was "a pretext for discrimination." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005). In so doing, the plaintiff may not recast the reason or attempt to "substitute his business judgment for that of the employer." *Chapman*, 229 F.3d at 1030. "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Id.* (noting, in an ADEA case, that a reasonable employer could choose not to hire an individual based on the job applicant's recent job instability because how the applicant would act in the future was "better predicted from recent behavior than from what happened ten or twenty years ago").

Rather, the plaintiff must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons . . . that a reasonable factfinder could find them unworthy of

credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (quotation omitted). For example, where a plaintiff attempts to show pretext by arguing that he was more qualified than another individual, he must show, in light of those superior qualifications, that "no reasonable person" would have selected the other candidate rather than the plaintiff. *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (quotation omitted).

An employer's proffered reason may be based on subjective qualities so long as the employer "articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." *Chapman*, 229 F.3d at 1033-34. Finally, statements may be "highly suggestive circumstantial evidence" of discriminatory intent. *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1362 (11th Cir. 1999). For example, after terminating an older employee and replacing him with a younger employee, a district manager's comment that he wanted to promote "aggressive, *young* men" might show discriminatory intent given its "substance, context, and timing." *Id.* (quotation omitted).

The magistrate was correct that Lucas did not show that Grayer's reasons for selecting McDonald rather than Lucas were a pretext for discrimination.[2]

---

[2] The first two steps of the *McDonnell Douglas* framework are not at issue on appeal. The government does not dispute that Lucas can establish a *prima facie* case of discrimination. In his brief, Lucas makes no argument that the government failed to proffer legitimate,

9

Although both McDonald and Lucas were qualified for the correctional counselor position, Grayer determined that McDonald would be more successful in the position based on her work ethic and outstanding performance evaluation. Lucas first argues that these reasons were pretextual based on Grayer's comments regarding employees in retirement mode. However, unlike the comment regarding "aggressive, *young* men" in *Damon*, the "substance, context, and timing" of Grayer's "retirement mode" comments do not indicate that he harbored discriminatory animus in selecting McDonald. 196 F.3d at 1362 (quotation omitted). Rather, the comment was made during a conversation that did not involve Lucas, Grayer did not state that he would not promote anyone in retirement mode, and there had been problems with older counselors completing their work. Further, Grayer testified that these comments referred to his personal career philosophy and that, based on the fact that Lucas applied for the position, he did not think that Lucas was focused on retirement. Thus, the context of the remarks indicates that Grayer was expressing concern that employees were not completing their work, not indicating that he would not hire an employee

_____

nondiscriminatory reasons for promoting McDonald. Accordingly, he has abandoned any argument as to the second step in the *McDonnell Douglas* framework. *See Tanner Adver. Grp., L.L.C. v. Fayette Cnty., Ga.*, 451 F.3d 777, 785 (11th Cir. 2006) (*en banc*) (noting that issues not briefed are ordinarily abandoned).

10

approaching retirement age.

Lucas's second pretext argument is that Grayer's criteria were subjective and showed discriminatory animus. Grayer's subjective criteria, such as his desire to find an employee doing the best job possible, who was "the cream of the crop," and who had potential in the future, are not evidence of pretext or discriminatory animus. Grayer used a sufficiently specific factual basis to determine which applicant met those subjective criteria: the applicants' most recent performance evaluations. *See Chapman*, 229 F.3d at 1033-34. As in *Chapman*, it was reasonable for Grayer to consider the applicants' recent job performance as an indication of how they would perform in the future if they were promoted. *See* 229 F.3d at 1030-31.

Lucas's third pretext argument centers on the validity of Grayer's selection in light of the fact that Lucas and McDonald did not have the same job responsibilities. In questioning the validity of comparing Lucas and McDonald, Lucas merely questions the wisdom of Grayer's decision without rebutting Grayer's legitimate, nondiscriminatory reasons. *See Chapman*, 229 F.3d at 1030. Because Grayer looked for the applicant putting in the best effort to be an outstanding employee, there is no reason that their specific job duties would have been relevant to Grayer's final decision, nor is there evidence of discrimination.

11

Finally, Lucas argues that he was better qualified than McDonald to be a correctional counselor, which he asserts is evidence of pretext. Lucas fails to acknowledge that the Bureau of Prisons's central staffing unit—not Grayer—determined which applicants met the required qualifications for a position. As both McDonald and Lucas were qualified for the correctional counselor position, a reasonable person could select McDonald rather than Lucas despite Lucas's college degree and prior experience in the Bureau of Prisons. *See Springer*, 509 F.3d at 1349. This conclusion is particularly evident in light of Lucas's recent lower performance rating, which, in the employer's permissible judgment, was a better predictor of the effort he would put into the position than his past educational and work accomplishments. *See Chapman*, 229 F.3d at 1030-31. Based on the above, Lucas has not shown that Grayer's legitimate, nondiscriminatory reasons for promoting McDonald were a pretext for discrimination.

For the foregoing reasons, we affirm the magistrate's grant of summary judgment to the government.

**AFFIRMED.**