[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11117
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cv-00793-MHS

INEZ MANIGAULT,

Plaintiff - Appellant,

versus

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant - Appellee,

SOCIAL SECURITY ADMINISTRATION,
Atlanta, GA (Region IV),

Defendant.
_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(April 21, 2015)

Before TJOFLAT, MARCUS and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

The District Court, adopting the Report and Recommendation of the Magistrate Judge, granted the Commissioner of the Social Security Administration ("the Commissioner") summary judgment on the claims Inez Manigault brought under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17. Manigault's claims were (1) that she was denied a promotion to the position of Lead Legal Assistant due to her age,[1] and (2) that she was subject to retaliation—the denial of the Lead Legal Assistant position in the Atlanta North Office of the Social Security Administration Office of Disability Adjudication and Review (ODAR) and a thirty-day suspension from work—for complaining to the Equal Employment Opportunity ("EEO") office about her suspension. The District Court found for the Commissioner on these claims on the ground that Manigault failed to establish a *prima facie* case for relief. Proceeding *pro se*, she appeals the rulings, arguing that the record reveals a *prima facie* case on both claims.[2] We disagree and therefore affirm.[3]

---

[1] Manigault was born on March 20, 1950.

[2] The District Court granted summary judgment on the claims Manigault asserted in her second amended complaint, which, like her previous complaints, she filed *pro se*. Before the Magistrate Judge, she sought leave to amend that complaint. The Magistrate Judge denied leave. Manigault did not challenge the decision in her objections to the Magistrate Judge's Report and

The relevant facts are these.  Manigault was employed by ODAR from 1998 until January 2011, when she retired.  She was a Senior Case Technician/Legal Assistant in ODAR's Atlanta North Hearing Office[4] from 2001 until January 2011, except for the year, April 30, 2006, through April 29, 2007, she spent in ODAR's Downtown Atlanta Office on temporary assignment as a Paralegal Specialist.

The circumstances that led to Manigault's filing of this lawsuit began on July 26, 2007, three months after her temporary assignment to the Downtown Office had ended.  Manigault went to the Downtown Office to retrieve some personal belongings she had left at her workstation there.  When she arrived, she discovered that her belongings had been boxed up and moved from the workstation.  Brenda Gardner, a supervisor in the Downtown Office, told her where she could find them, and Manigault, visibly upset, became loud and belligerent, addressing Gardner and those in the area with profanity.  A Federal

---

Recommendation filed with the District Court.  Assuming that she somehow preserved the issue for review here, we find no abuse of discretion in the denial of leave to amend.  Manigault also claims that she was denied due process of law in connection with the 30-day suspension.  Manigault failed to present her due process claim to the District Court; hence, it did not rule on the claim.  Neither do we.

[3]  We review the District Court's grant of summary judgment *de novo*, taking the evidence in the light most favorable to the nonmoving party below, Manigault.  *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785 (11th Cir. 2005).

[4]  Her job was to prepare cases for hearings before the Administrative Law Judges.

3

Protective Service officer was summoned and escorted Manigault out of the building. She was immediately placed on administrative leave and remained in that status until October 10, 2007.

On October 29, 2007, Manigault's supervisor in the Atlanta North Hearing Office, Lynette Montalvo, issued a memorandum proposing that Manigault be suspended for 30 days without pay based on the July 26, 2007, incident. Manigault responded to this proposal in January 2008. In April 2008, while the proposal was under consideration by Catherine Palmer, who was in charge of the Atlanta North Hearing Office, Manigault applied for an open position as Lead Legal Assistant. Palmer was also charged with selecting the person who would fill the position.

On May 28, 2008, Palmer issued a decision suspending Manigault for 30 days, effective June 8, 2008, for her "discourteous, disrespectful, and disruptive behavior and use of profanity" at the Downtown Office on July 26, 2007. On June 5, 2008, Manigault complained to the EEO Office about her suspension. On June 13, Palmer appointed Patricia Pendergrass to the Lead Legal Assistant position. On June 24, an EEO counsellor notified Palmer of Manigault's complaint, and inquired about her decision to suspend Manigault.

I.

Under the ADEA, an employer may not discriminate against an employee who is at least 40 years old. 29 U.S.C. §§ 623(a), 631(a). In proving an age-

4

discrimination claim, a plaintiff may establish a *prima facie* case either by showing direct evidence of discrimination or by indirect evidence.  *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999).  Indirect evidence is circumstantial evidence.  *Standard v. A.B.E.L. Servs.*, 161 F.3d 1318, 1330 (11th Cir. 1998).  "[R]emarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination."  *Id.*

We have adopted a variation of the test articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), for circumstantial-evidence cases arising under the ADEA.  *See Mitchell v. Worldwide Underwriters Ins. Co.*, 967 F.2d 565, 566 (11th Cir. 1992).  To make out a *prima facie* case of age discrimination, the plaintiff may show that (1) she was a member of the protected group of people between the ages of 40 and 70, (2) she was subject to adverse employment action, (3) a substantially younger person filled the position she sought, and (4) she was qualified for the job she sought.  *See Damon*, 196 F.3d at 1359.

Here, the record supports the District Court's conclusion that Manigault failed to establish a *prima facie* case of age discrimination.  Patricia Pendergrass was not substantially younger than Manigault; the two were born within three months of each other.

## II.

Manigault claims that Palmer's decisions to suspend her for 30 days and to select Pendergrass over her for the Lead Legal Assistant position were in retaliation for her having complained to the EEO Office on June 5, 2008, about the suspension.[5]  Title VII prohibits an employer from discriminating "against an employee 'because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'"  *Coutu v. Martin Cnty. Bd. of Cnty. Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995) (quoting 42 U.S.C. § 2000e-3(a)).  The ADEA also prohibits such retaliatory discrimination.  29 U.S.C. § 623(d).  The same substantive analysis applies to claims of retaliation brought under the ADEA and Title VII.  *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002).  Under both statutes, when a plaintiff uses circumstantial evidence to prove a claim, this court applies the *McDonnell Douglas* analytical framework to assess the claim.  *See Standard*, 161 F.3d at 1331.

Under the *McDonnell Douglas* framework, the plaintiff must first make a *prima facie* case of retaliation.  *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160,

---

[5] Manigault also claims that Palmer's decisions were in retaliation for EEO activity in which she engaged in 2002, when she filed a complaint of discrimination she did not pursue. The claim is patently frivolous; the six-year period between that activity and Palmer's challenged decisions is too remote in time to establish causation.

6

1181 (11th Cir. 2010).  To successfully establish a *prima facie* retaliation claim under the ADEA or Title VII, a plaintiff may show that: (1) she engaged in statutorily protected expression; (2) she suffered a materially adverse action; and (3) the adverse action was causally related to the protected expression.  *See id*.; *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006).  The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action, but the temporal relationship must be very close. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).  At a minimum, however, the adverse act must have followed the protected conduct— "this minimum proof stems from the important requirement that the employer was actually aware of the protected expression at the time it took adverse employment action."  *Griffin v. GTE Fla., Inc.*, 182 F.3d 1279, 1284 (11th Cir. 1999) (quotations omitted).

If the plaintiff makes out a *prima facie* case of retaliation and the employer articulates some legitimate, nondiscriminatory reason for the employment decision, then the plaintiff must show that each proffered reason was pretextual.  *Brown*, 597 F.3d at 1181–82.  If the employer offers more than one legitimate, non-discriminatory reason, the plaintiff must rebut each reason.  *Chapman v. AI Transp.*, 229 F.3d 1012, 1037 (11th Cir. 2000) (*en banc*).

7

When seeking to show pretext, an employee must meet the employer's stated reason "head on and rebut it, and [she] cannot succeed by simply quarreling with the wisdom of that reason." *Id.* at 1030. To show pretext, the plaintiff must show that a proffered reason is false. *Brooks v. Cnty. Comm'n*, 446 F.3d 1160, 1162–63 (11th Cir. 2006). She "may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 1163 (quoting *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005)). Conclusory allegations alone are insufficient. *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996). The plaintiff must identify "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's rationale." *Holland v. Gee*, 677 F.3d 1047, 1055–56 (11th Cir. 2012) (quotation omitted). In the context of a promotion, the plaintiff "must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by a [discriminatory factor]." *Brooks*, 446 F.3d at 1163 (quoting *Alexander v. Fulton Cnty.*, 207 F.3d 1303, 1339 (11th Cir. 2000)). To do so, the plaintiff must show that "the disparities between the successful applicant's and her own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial

8

judgment, could have chosen the candidate selected over the plaintiff." *Id.* (quoting *Cooper v. S. Co.*, 390 F.3d 695, 732 (11th Cir. 2004)).

The District Court did not err in concluding that Manigault failed to establish a *prima facie* case of retaliation, for she failed show a causal link between the adverse acts of non-promotion or suspension and her protected activity of complaining to the EEO Office on June 5, 2008. *See Brown*, 597 F.3d at 1181. Palmer decided both to suspend Manigault and to select Pendergrass to fill the Lead Legal Assistant position before June 24, 2008, when she first received notice of Manigault's EEO complaint.[6]  Because Palmer was not aware of Manigault's EEO complaint at the time she made either decision, Manigault cannot show the requisite causal link between statutorily protected conduct and the adverse employment action. *See Griffin*, 182 F.3d at 1284.  Even if we were to assume that Manigault did establish a causal link, the Commissioner articulated the following legitimate reasons for the adverse employment actions: Palmer suspended Manigault because of her disruptive outburst at the Downtown Office and promoted Pendergrass because she as more qualified than Manigault—Pendergrass had more experience with the Electronic Folder Process ("EFP"), an automated system which the office would be using; she was responsible for training staff in

---

[6] Though Manigault had contacted Palmer prior to June 2008, the subject matter of their communications did not concern statutorily protected activities.

9

the EFP; and she had demonstrated an ability to interact effectively with other staff.  Manigault has failed to show that these reasons were pretextual.  *See Brown*, 597 F.3d at 1181–82.

AFFIRMED.

10