[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
12/03/99
THOMAS  K. KAHN
CLERK

———————————————

No. 98-5554

———————————————

D. C. Docket No. 1:97-CV-230

WALTER DAMON, RICHARD KANAFANI,

Plaintiffs-Appellants,

versus

FLEMING SUPERMARKETS OF FLORIDA, INC.,
f.d.b.a. Wooley's Fine Foods, etc.,

Defendant-Appellee.

————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————

**(December 3, 1999)**

Before EDMONDSON and MARCUS, Circuit Judges, and ALARCON[*], Senior
Circuit Judge.

MARCUS, Circuit Judge:

————————

[*]Honorable Arthur L. Alarcon, Senior U.S. Circuit Judge for the Ninth Circuit,
sitting by designation.

In this age discrimination suit, Appellants Walter Damon and Richard Kanafani appeal from an order of the district court granting summary judgment in favor of the defendant, Fleming Supermarkets of Florida, Inc. d/b/a Hyde Park Markets, f/d/b/a Wooley's Fine Foods ("Fleming"). Damon and Kanafani brought this action against Fleming, their former employer, alleging violations of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621-634, and the Florida Civil Rights Act of 1992, Fl.Stat.Ann. §§ 760.01-760.11. The district court concluded that neither plaintiff had established a prima facie case of age discrimination, nor, in the alternative, had demonstrated that the legitimate nondiscriminatory reasons proffered by Fleming for their terminations were a pretext for age discrimination. We disagree, finding material facts in dispute. Accordingly, we reverse the order of summary judgment and remand for trial.

I.

We review a district court's order granting summary judgment *de novo*. *Browning v. AT&T Paradyne*, 120 F.3d 222 (11th Cir. 1997). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *United States v. Four Parcels of Real*

2

*Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (citation omitted). In making this determination, we review the record, drawing all reasonable inferences in the light most favorable to the nonmoving party. *See Jameson v. Arrow Co.*, 75 F.3d 1528, 1531 (11th Cir. 1996).

## II.

The facts presented are reasonably straightforward. Fleming, a nationwide supermarket chain, acquired twenty South Florida supermarket stores in September 1993 from Pantry Pride (d/b/a Wooley's Fine Foods). It immediately installed Harry Soto as district manager of seven of the stores. At the time, Appellants Walter Damon and Richard Kanafani were store managers at two of the stores acquired by Fleming. Each of their stores was placed under the direct supervision of Soto. The undisputed evidence demonstrates that, within a period of slightly over one year after assuming the position of district manager, Soto terminated or demoted five older, more experienced managers, including Damon and Kanafani, and replaced them with men who were younger and less experienced. The older managers were all over forty, and the younger managers were all under forty. Soto himself acknowledged that this pattern occurred. No evidence was presented by Fleming that any younger managers were terminated by Soto while he was district

manager.  Damon was fired for alleged poor performance.  Kanafani was fired for allegedly yelling profanities at an employee on the sales floor.

III.

In its September 16, 1998 summary judgment order, the district court made several pertinent conclusions of law.  First,  the district court reasoned that Appellants had not established all the elements of a prima facie case of age discrimination.   Specifically, the district court found that Damon and Kanafani neither established that they were qualified for their positions under the *McDonnell Douglas* rubric nor proffered direct evidence of discrimination by Fleming.  The district court also suggested in dicta that Kanafani had failed to establish that he was replaced by someone substantially younger because, at the time of his termination, Kanafani was forty-two and his replacement was thirty-seven.  Finally, the district court concluded that Appellants did not establish that the nondiscriminatory reasons Fleming offered for the terminations were a pretext for age discrimination.  We discuss each conclusion in turn.


A.    Prima Facie Case

In proving an age discrimination claim, a plaintiff can establish a prima facie case of discrimination through either direct evidence of discrimination or a variation of the four-part test outlined in *McDonnell Douglas Corp. v. Green*, 411

4

U.S. 792 (1973) for circumstantial evidence. *See Carter v. City of Miami*, 870 F.2d 578, 581(11th Cir. 1989)  Appellants' claims rely on both methods.

1.     Direct Evidence of Discrimination

We agree with the district court that neither plaintiff has presented direct evidence of age discrimination.  We have defined direct evidence of discrimination as evidence which reflects "'a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee.'"  *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641 (11th Cir. 1998) (quoting *Caban-Wheeler v. Elsea*, 904 F.2d 1549, 1555 (11th Cir. 1990)). In other words, the evidence must indicate that the complained-of employment decision was *motivated* by the decision-maker's ageism.  As a result, "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age" will constitute direct evidence of discrimination.  *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081-82 (11th Cir. 1990) (citations and quotations omitted); *see also City of Miami*, 870 F.2d at 582.   An example of "direct evidence would be a management memorandum saying, 'Fire Earley--he is too old.'"  *Earley*, 907 F.2d at 1082.  No evidence presented by Appellants meets this rigorous standard.

The most probative piece of alleged direct evidence cited by Appellants is a comment by Soto to Dennis D'Angelo, Kanafani's replacement, immediately after Kanafani's termination that "what the company needed was aggressive *young* men like [D'Angelo] to be promoted."[1] While the statement was made right after Kanafani's termination, and it was made by Soto, the decision-maker, to Kanafani's younger replacement, the comment does not amount to direct evidence of discrimination. Though probative circumstantial evidence of Soto's state of mind, the comment still requires us to *infer* that Soto's interest in promoting young men motivated his decision to terminate Kanafani. In similar instances, our court has refused to classify such comments as direct evidence of discrimination. *See, e.g.*, *Beaver v. Rayonier Inc.*, 188 F.3d 1279, 1285-86 (11th Cir. 1999) (finding that decision-maker's comment that he wanted to attract "younger, engineer-type

---

[1]In addition to this comment, Appellants also rely on an alleged comment by Soto that he wanted "a younger influx of blood." There is no record evidence that Soto ever made this comment. The only evidence of this comment is double hearsay testimony from a co-worker, Charlie Guerra, that another employee, Justo Varela, overheard the comment at a store meeting and told Guerra about it. Varela avers in an affidavit that he never heard the comment nor told Guerra about the alleged comment. Guerra did not hear Soto make the comment, and was not even present at the meeting in question. This comment is inadmissible double hearsay, and we refuse to consider it as probative evidence. *See Zaben v. Air Products & Chemicals, Inc.,* 129 F.3d 1453, 1455-57 (11th Cir. 1997). Finally, Appellants rely on Soto's admission that, under his direction, there was a pattern of firing or demoting older managers, and replacing them with younger managers. While probative circumstantial evidence, this pattern is not direct evidence of discrimination because it does not directly establish that Soto's termination decisions were motivated by age bias.

employees or supervisors" in reduction-in-force case did not rise to level of direct evidence of discrimination); *Burrell v. Board of Trustees of Georgia Military College*, 125 F.3d 1390, 1393-94 (11th Cir. 1997) (holding that evidence which suggests, but does not prove, a discriminatory motive, is circumstantial evidence by definition). We therefore conclude that the district court correctly found no direct evidence of age discrimination.

2.      Circumstantial Evidence of Discrimination

In evaluating age discrimination claims based on circumstantial evidence, we require a plaintiff to initially satisfy a four-part prima facie requirement: (1) that she was a member of the protected group of persons between the ages of forty and seventy; (2) that she was subject to adverse employment action; (3) that a substantially younger person filled the position that she sought or from which she was discharged; and (4) that she was qualified to do the job for which she was rejected. *See Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998) (citations omitted).

We conclude that both Appellants established prima facie cases of age discrimination. First, there is no dispute that Appellants satisfied the first two requirements. Both Appellants are members of the protected group and were

subjected to adverse employment actions. As for the third element, Appellees concede that Damon satisfied the third requirement in that he was replaced by someone "substantially younger." However, both the Appellees and the district court, in dicta, suggest that Kanafani did not meet this requirement because, at the time of Kanafani's termination, his replacement was thirty-seven, while Kanafani was only forty-two. We disagree. Previously, we have held that a replacement who is only *three* years younger is sufficient to establish a prima facie case. *See Carter v. Decisionone Corp.,* 122 F.3d 997, 1003 (11th Cir. 1997) (holding that plaintiff aged 42, who was replaced by employee aged 39, met the "substantially younger" replacement requirement under ADEA) (citing *Carter v. City of Miami*, 870 F.2d 578, 582-83 (11th Cir. 1989)). Here, there is a five year age difference between Kanafani and his replacement. We therefore find that Kanafani has satisfied the "substantially younger" replacement requirement.

Finally, we conclude that Kanafani and Damon were "qualified" for their respective positions, satisfying the fourth and final prima facie requirement. In age discrimination cases, our court focuses on a plaintiff's "skills and background to determine if they were qualified for a particular position." *Clark v. Coats & Clark*, 990 F.2d 1217, 1227 (11th Cir. 1993). Our precedent holds that if a plaintiff has enjoyed a long tenure at a certain position, we can infer that he or she

is qualified to hold that particular position. *See id.* (inferring a plaintiff's job qualifications from his 25 years of experience); *Pace v. Southern Railway System*, 701 F.2d 1383, 1386 n.7 (11th Cir. 1983) (finding that "where a plaintiff has held a position for a significant period of time, qualification for that position, sufficient to satisfy a prima facie case, can be inferred"). Based on the employment history of Damon and Kanafani, we can infer that they were qualified for their respective positions. Appellants were store managers for more than a decade, and, by all accounts, had performed their jobs with distinction during the bulk of that period. Damon held the position of store manager for 34 years, and consistently received numerous awards, commendations, and merit raises. Kanafani was a store manager for13 years, and also received his share of bonus awards and merit raises.

In finding the Appellants unqualified, the district court incorrectly considered Fleming's allegations of Appellants' poor performance. Our caselaw quite clearly instructs that plaintiffs, who have been discharged from a previously held position, do not need to satisfy the *McDonnell Douglas* prong "'requiring proof of qualification.'" *Young v. General Foods Corp.*, 840 F.2d 825, 830 n.3 (11th Cir. 1988) (quoting *Rosenfeld v. Wellington Leisure Products, Inc.*, 827 F.2d 1493, 1495 n.2 (11th Cir. 1987)). We have explained that the "'reason for this

9

modification [of *McDonnell Douglas*] is that in cases where a plaintiff has held a position for a significant period of time, qualification for that position sufficient to satisfy the test of a prima facie case can be inferred.'" *Young*, 840 F.2d at 830 n.3 (quoting *Rosenfeld*, 827 F.2d at 1495 n.2).  We also have unambiguously held that allegations of poor performance against  plaintiffs discharged from long-held positions may be properly considered, only *after* a prima facie case has been established, when a court evaluates the pretextual nature of an employer's proffered nondiscriminatory reasons for termination.  *See Clark*, 990 F.2d at 1227 (holding that evidence of employee's performance reprimands do not establish that employee was unqualified, but may indicate company was legitimately concerned about employee's performance); *Young*, 840 F.2d at 830 n.3 (same).  The district court therefore erred in concluding that Appellants were not "qualified" based on Fleming's allegations of poor performance.

B.      Pretext

        Having concluded that Appellants met their prima facie burdens, we turn to the remaining issue of pretext.  Once a prima facie case is established, a defendant must proffer legitimate, nondiscriminatory reasons for its employment decision.  If such reasons are identified, a plaintiff then bears the ultimate burden of proving

them to be  a pretext for age discrimination.  *See Turlington*, 135 F.3d at 1432.  We have repeatedly and emphatically held that a defendant may terminate an employee for a good or bad reason without violating federal law.  *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991).  We are not in the business of adjudging whether employment decisions are prudent or fair.  Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.  *See Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984).  In this case, Fleming clearly offered legitimate, nondiscriminatory reasons for terminating Damon (poor performance), and Kanafani (yelling vulgarities in front of customers).  Therefore, Appellants bore the burden of offering enough probative evidence so that a reasonable jury might conclude that Fleming's reasons for termination were a pretext for age discrimination.  *See Bogle v. Orange County Bd. of County Comm'rs*, 162 F.3d 653, 658 (11th Cir. 1998).  In the summary judgment context, we conduct this inquiry by determining whether a jury "could reasonably infer discrimination if the facts presented [by Appellants] remain unrebutted."  *Jameson*, 75 F.3d at 1531 (citations omitted).  We must avoid weighing conflicting evidence or making credibility determinations.  Rather, "'[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'"  *Hairston v.*

11

*Gainesville Sun Publishing Co.*, 9 F.3d 913, 918 (11th Cir. 1993) (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  After a painstaking

review of the entire record, we find that Appellants have made this requisite

showing.

First, circumstantial evidence was presented of Soto's discriminatory animus

towards older store managers under his direct supervision.  Within a one-year

period, *four* older, highly experienced store managers, out of a total of *seven*

managers under Soto's *direct supervision*, were terminated or demoted, and each

was replaced by  an employee under forty years old.  In addition, Soto also

terminated a highly experienced, older assistant store manager, during this time

period, and replaced him with an employee under forty years old. As Soto

conceded, "[I]t certainly turns out that what has occurred is that older managers

were either fired or demoted and replaced by younger people," and that "in every

instance ... the older store managers had more years of experience than the people

that replaced them."  While not direct evidence of discriminatory animus, we

believe that this pattern of firing and demoting *so many* older workers and replacing

them with younger workers, *by the relevant decision-maker during the same time*

*period*, constitutes probative circumstantial evidence of age discrimination.  *See*

*Stamey  v. Southern Bell Telephone & Telegraph Co.*, 859 F.2d 855, 862 (11th Cir.

1988). Moreover, the probative value of this pattern was underscored by direct testimony. Kanafani testified that, in January 1994, Fleming began placing advertisements for new store managers even though there were no managerial vacancies at the time. According to Kanafani, Harry Soto then began interviewing younger managerial candidates at Kanafani's store. Several of these candidates were later hired by Soto to replace Kanafani and the other older managers. Record evidence also reveals that shortly thereafter, older managers with good employment histories, under Soto's direct supervision, began receiving written reprimands for "poor store conditions" or "poor sales." Three former managers of Fleming, in addition to Damon, averred that they were demoted or terminated by Soto, after receiving written reprimands for "poor store conditions," "poor performance," or "poor sales," and replaced by a substantially younger manager. Each former manager also disputed the veracity of their reprimands.

Second, Soto's remark to Kanafani's younger successor, D'Angelo, right after Kanafani was terminated, that Soto wanted "aggressive, *young* men" like himself to be promoted is highly suggestive circumstantial evidence from which a jury could infer discriminatory animus.[2] Far from being a stray remark, the

---

[2]D'Angelo twice averred that Soto used the term "aggressive *young* men," although D'Angelo, who still works for Fleming, later stated, under examination by defense counsel, that he was not sure whether Soto actually used the word "young."

13

Kanafani also testified that D'Angelo told him that Soto had used the term "aggressive *young* men." The entire transcript of D'Angelo's testimony reads as follows:

> Q. [Plaintiff's Attorney]: Did you ever have a one-on-one conversation with Harry Soto where Mr. Soto told you that what the company needed was aggressive young men like yourself to be promoted.
> A. [D'Angelo]: Yes.
> Q. Why don't you tell me how this conversation went?
> A. This was right after Rick [Kanafani] was terminated and Harry had brought me up to the main office to explain to me that he had terminated Rick, and that the company was going in a new direction, and we had to hold onto our pants, was like the catch phrase at the time. Things were moving fast.
> Q. That's when he told you that the company needed aggressive young men like yourself?
> A. He included me in -- I can't remember the exact word he used, but he included me in that mix, because I was in charge of the store for a week and a half until Tony Calaverio came in.
> Q. But he did tell you that the company needed aggressive young men?
> A. I can't recall that. I really can't.
> Attorney: Could you read back to me my question?
> (Thereupon, a portion of the record was read by the reporter as follows: Question: Did you ever have a one-on-one conversation with Harry Soto where Mr. Soto told you that what the company needed was aggressive young men like yourself to be promoted.
> Answer. Yes.)
> Q. Is that what happened?
> [Objection to form]
> A. Yes.
>
> ...

14

comment may evince probative evidence of the state of mind of the decision-maker at the time of Kanafani's termination. The comment also arguably suggests that Soto had an ageist preference for young managers. Given the substance, context, and timing of Soto's comment, if credited, we find it to be a significant piece of circumstantial evidence. *See Jones v. Bessemer Carraway Medical Ctr.*, 151 F.3d 1321, 1323 n.11 (11th Cir. 1998) (holding that "language not amounting to direct evidence, but showing some racial animus, may be *significant* evidence of pretext

---

Q. [Defendant's Attorney]:. Do you have a recollection that these following words came out of Harry Soto, Harry Soto said the following words: We need aggressive young men like yourself? Do you have the recollection that he said that to you?
...
A. [D'Angelo]: It was something similar to that. It could be a paraphrase, so – I know aggressive was in there. He used me – I guess it was a motivational tool.
Q. Did he say the word 'young'?
A. That, I can't recall.
Q.But you can recall that he said aggressive?
A. Aggressive, yes, yes, aggressive.
Q. And he included yourself?
A. Yes.
Q. But you're not sure if he said young?
A. I'm not sure about that.

We are satisfied that a jury should weigh the credibility of this circumstantial evidence. *See Walker v. Nationsbank*, 53 F.3d 1548, 1563 (11th Cir. 1985) (Johnson, J. specially concurring)( noting that "the factfinder must evaluate the credibility of the witnesses and the weight of the evidence. This task is peculiarly the province of the jury.") (citing *Castle v. Sangamo Weston, Inc*., 837 F.2d 1550, 1559 (11th Cir.1988)); *see also Combs*, 106 F.3d at 1530 (stating, in the summary judgment context, that "[i]ssues of fact and sufficiency of evidence are properly reserved for the jury") (citation omitted).

once a plaintiff has set out a prima facie case) (emphasis added); *see also Rayonier*, 188 F.3d at 1286 (finding decision-maker's comment that he wanted "younger" employees to constitute circumstantial evidence of a discriminatory motive); *Alphin v. Sears, Roebuck & Co.*, 940 F.2d 1497, 1499 (11th Cir. 1991) (finding remark by supervisor to plaintiff that he had "been around too long and [was] too old and [was] making too much money" immediately after a "corrective interview" to be circumstantial evidence of age discrimination). Moreover, we also find Soto's statement to be probative as to whether age animus motivated the decision to terminate Damon because the remark (1) was allegedly made only three months after Damon was terminated, (2) immediately followed the termination of someone similarly situated to Damon and in the same protected class, and (3) came from the same decision-maker responsible for Damon's termination. *See Ryder v. Westinghouse Electric Corp.*, 128 F.3d 128, 130-133 (3d Cir. 1997) (holding that remarks made *one year* after termination, and not directly about plaintiff, could be taken by a jury as an accurate reflection of the existing managerial attitude toward older workers) (emphasis added).

In addition to this circumstantial evidence, we conclude that Appellants have offered evidentiary support by which a reasonable jury could conclude that the specific reasons for termination given by Fleming were a pretext. Appellants both

were terminated for alleged violations of company work rules. On summary judgment, we have written that the "work rule" defense is arguably pretextual when a plaintiff submits evidence (1) that she did not violate the cited work rule, or (2) that if she did violate the rule, other employees outside the protected class, who engaged in similar acts, were not similarly treated. *See Alphin*, 940 F.2d at 1501 n.1 (citing *Anderson v. Savage Laboratories, Inc.*, 675 F.2d 1221, 1224 (11th Cir. 1982)). We are satisfied that Appellants have made this requisite showing.[3]

With respect to Damon, Fleming contends that Damon was fired for poor performance; specifically, that over a six month period his store was cited by Fleming management on four separate occasions for "poor conditions." Damon flatly denies these allegations, and has adduced sufficient evidence to create a genuine dispute of material fact as to his job performance.

---

[3]Of course, this framework is simply used to assess whether a plaintiff has presented sufficient evidence to establish pretext–that is, the employer has not given an honest explanation of the employer's behavior–and thereby reach a jury on the ultimate question of discrimination. This framework, however, does not vitiate a plaintiff's ultimate burden to prove by a preponderance of the evidence that an employer terminated the plaintiff based on a discriminatory motive. An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct. An employer "'may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long *as its action is not for a discriminatory reason.*'" *Jones*, 151 F.3d at 1324 n.16 (quoting *Nix*, 738 F.2d at 1187) (emphasis added).

The first set of relevant allegations involve a February 24, 1994 visit by Soto to Damon's store. According to Damon, he and Soto discussed the store's overall appearance during the visit, but Soto never stated that conditions were below acceptable company standards. However, a week later, on March 4, 1994, Soto issued a written reprimand to Damon for store conditions in violation of company policy. According to Damon, Soto ordered him to sign the reprimand even though he did not agree with the reprimand's charges. Damon also averred that his store was in good condition on February 24, 1994, that the letter was a "fabrication," and that at no time prior to the reprimand did Soto tell him that store conditions were unacceptable. The reprimand gave Damon until March 15 to correct the violations. Soto conducted a follow-up store inspection on March 12, 1994. In an internal memo of the same day, which apparently was never shown to Damon, Soto found several uncorrected store violations. However, Soto subsequently testified that, by March 15, all of the store's violations had been fixed by Damon. Indeed, Soto admitted that Damon's ability to bring his store into compliance showed impressive managerial drive. For the next few months, Damon received no reprimands.

On May 30, 1994, during Memorial Day Weekend, Mel Beech, Fleming's Vice President of Store Operations and Soto's direct supervisor, visited Damon's store. On June 9, 1994, ten days after this visit, Damon received a written

18

reprimand from Soto for conditions allegedly found at the store during Beech's visit. The reprimand charged that Damon had been warned previously about performance improvements expected from him, that Damon was not performing consistently enough to continue in his position, and that any further operational problems would result in Damon's immediate termination. Damon disputes that the store was in poor condition during Beech's visit, and denies every single specific criticism contained in the June reprimand, save one minor point.[4] Damon also reiterates that the memorandum was a "fabrication" designed to justify his eventual firing, and that other older store managers in Soto's district received similar letters threatening to terminate or demote them, while he knew of no younger manager who received a similar letter.[5]

---

[4]Of eight specific criticisms, Damon only conceded that three clerks may have been taking a break in the back room for a portion of Beech's visit. Among other things, he disputes that the meat and seafood cases were empty, that there were miscellaneous floor displays all over the store, that there was poor signage, that floor conditions were deplorable, and that there was poor customer service.

[5]Damon testified that he personally spoke to several older managers about their receipt of threat-to-terminate memos in 1994. He also stated that he spoke to several of the younger managers, including Dave Applebaum, who denied receiving similar letters despite the fact that their stores were kept in similar condition to Damon's store.

Finally, on July 1, 1994, at the start of the busy July 4th weekend, Soto revisited Damon's store, and filed another reprimand of Damon. Five days later, Soto terminated Damon, by letter, for poor performance. Damon disputes the specific allegations of his store's poor condition, contained in the July reprimand, as well as Soto's claim that he had given Damon repeated verbal warnings about his alleged performance deficiencies. Moreover, Damon asserts that, Soto told him in the course of *direct* conversations, that he was doing a good job, and that his store's conditions had improved since Damon had become store manager. Damon also avers that he visited the stores of younger store managers and found that their stores were either in the same or worse shape during this relevant time period. None of these younger managers were terminated. Damon's testimony is corroborated by Julio Nunez, a former Fleming manager promoted by Soto, who testified that Damon's store was essentially in the same condition as the rest of Fleming's South Florida stores during the relevant time period. Additionally, Soto also conceded that two of Damon's three reprimands for "poor store conditions" occurred during busy holiday weekends-- a time, according to Soto, when stores may well be in poor condition. Finally, evidence was presented that Luis Requejo, Damon's younger replacement, experienced substantially more severe problems in maintaining proper store conditions, and yet, was not fired. In addition to receiving two performance

20

reprimands from Soto in August and October 1994, Requejo's meat department received several reprimands from state food inspectors beginning in July 1995, one month after Soto was promoted to another company position. Eventually, Requejo's meat department was shut down for failure to comply with these state reprimands. Although Soto admitted that this problem was more serious than Damon's alleged deficiencies, Fleming took no disciplinary action against Requejo.

Based on the totality of this evidence, the age-based comment allegedly made by Soto to Kanafani's replacement, and Soto's purported pattern of demoting and firing numerous older managers in favor of younger replacements, we conclude that Damon has introduced sufficient evidence to avoid summary judgment on his age discrimination claim.

We draw a similar conclusion with respect to Kanafani's claim. The sole reason advanced by Soto, the actual decision-maker, for Kanafani's termination is a yelling incident involving Kanafani and his seafood department manager on October 1, 1994.[6] Dennis D'Angelo, Kanafani's replacement, also testified that

_____

[6]Fleming now claims, despite repeated statements by Soto, the decision-maker, during his deposition that Kanafani was fired *solely* because of his yelling vulgarities at an employee on the sales floor, that Kanafani also was terminated, in part, because of his "previous disregard of company rules and blatant unprofessionalism." As evidence, Fleming introduced a subsequent affidavit from Soto in its motion for summary judgment that somewhat broadens Soto's termination motives. In the affidavit, Soto claimed that he fired Kanafani after the yelling incident for his "failure

21

to improve his people skills," "[his] disregard of company rules, and his blatant unprofessionalism." However, during his earlier deposition, Soto unequivocally stated that the *sole* reason for Kanafani's termination was the yelling incident.

> Q. What was the basis for his [Kanafani's] termination?
> A. Using profanity on the sales floor where the customers were out in the open.
> . . .
> Q. Was he terminated because of poor store conditions or was he terminated because of using vulgarity on the sales floor in front of customers?
> A. He was terminated for using vulgarity on the sales floor in front of customers.
> Q. No other reason?
> A. That was the reason for the termination.
> . . .
> Q. So again, the only reason he was terminated was for using vulgarity on the sales floor, correct?
> A. That is correct.

Moreover, Dennis D'Angelo, Kanafani's replacement, also testified that Soto told him that Kanafani was fired solely because of the yelling incident. Based on the repeated statements by Soto during his deposition that he fired Kanafani solely for the yelling incident (as well as D'Angelo's corroboration of Soto's termination motive), we find that a jury could infer that the "inconsistencies" between Soto's deposition and affidavit may be evidence of pretext. *See Tidwell v. Carter Products*, 135 F.3d 1422, 1427-28 (11th Cir. 1988) (citing *Bechtel Construction Co. v. Secr. of Labor*, 50 F.3d 926 (11th Cir.1995); *Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 525 (11th Cir.1994)). Furthermore, Kanafani has produced sufficient evidence to create genuine issues of material fact as to his previous reprimands from Soto. Kanafani received three reprimands prior to the yelling incident for "poor sales," "poor store conditions," and an altercation with a beer vendor respectively. First, Kanafani testified that his store had become more profitable since he became store manager, creating a genuine issue of material fact as to the first reprimand. Second, while Kanafani received a reprimand for "poor store conditions" during the busy Memorial Day Holiday Weekend, Fleming does not directly proffer this reprimand as a basis for Kanafani's termination. Even if this reprimand were cited as a termination factor, we believe Kanafani has presented sufficient evidence that the reprimand was a pretext. During Memorial Day weekend, Kanafani was on vacation, and not in charge of the store. Julio Nunez, a younger assistant manager at the time, actually was acting store manager for the weekend.

22

Soto told him that the only reason Kanafani was fired was because he yelled at a fellow employee on the sales floor. Fleming claims that Kanafani uttered several vulgarities on the sales floor, where customers could overhear, and that this breach of company policy justified his immediate firing five days later. Kanafani admitted that he yelled during the incident, but vehemently denies using any vulgarity aside from the word "hell" once.[7] Kanafani's testimony creates a genuine issue of material fact with respect to whether he uttered profanities on the sales floor.

In addition, Kanafani also presented evidence which, if credited, could convince a jury that the incident was a pretext for his termination. Kanafani's replacement, Dennis D'Angelo, testified that he had observed members of Fleming management, including Soto himself, yell at employees *in front* of store customers. Soto admitted to yelling at employees with profane language, but claimed these

Despite this fact, Kanafani, and not Nunez, was reprimanded for the store's "poor condition." Nunez subsequently was promoted to store manager by Soto, replacing an older store manager, despite Soto's admission that he was aware that Nunez, and not Kanafani, was primarily responsible for the poor store conditions during Memorial Day Weekend. Finally, Kanafani vigorously denies that he upbraided the beer vendor over complimentary football tickets offered to him, or told the vendor "deliver better tickets or else." All Kanafani admits to is politely returning the tickets because they were not to his satisfaction, creating a genuine issue of material fact as to this incident. We believe that this evidence, when combined with all of the previously-cited circumstantial evidence, could convince a jury that Kanafani's reprimands were a pretext for his termination.

[7]Fleming asserts that Kanafani used the word "fuck" several times during the incident. Kanafani denies this claim, admitting only to stating at the end of the incident, "what the *hell* do you want me to do?"

23

incidents occurred in employee-only store areas. Previously, we have held that evidence demonstrating that the decision-maker engaged in the same policy violation proffered for an employee's termination is "especially compelling" evidence of pretext. *Ross v. Rhodes Furniture*, Inc., 146 F.3d 1286, 1291 (11th Cir. 1998). As a result, if a jury were to credit D'Angelo's testimony, they could reasonably find the yelling incident to be a pretext. When this testimony is combined with Soto's comment to D'Angelo, immediately after Kanafani's termination, that Soto wished to promote "*younger* aggressive men," and Soto's pattern of demoting and firing numerous older managers in favor of younger replacements, we conclude that Kanafani too has introduced sufficient circumstantial evidence to survive summary judgment.

In short, we find that the circumstantial evidence presented by Damon and Kanafani, taken as a whole, is sufficient to make a prima facie showing of age discrimination, and to rebut the nondiscriminatory reasons proffered by Fleming for their terminations. Material facts remain in dispute, precluding summary judgment. Accordingly, we reverse the district court's order of summary judgment and remand the case for further proceedings consistent with this opinion.

REVERSED and REMANDED.

24