[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-13197

_____

D.C. Docket No. 9:13-cv-80535-DMM


ROBERT LIEBMAN,

Plaintiff-Appellant,

versus

METROPOLITAN LIFE INSURANCE COMPANY,
d.b.a. MetLife,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 18, 2015)

Before ED CARNES, Chief Judge, MARTIN, Circuit Judge, and THAPAR,[*]
District Judge.

_____

[*] Honorable Amul R. Thapar, United States District Judge for the Eastern District of
Kentucky, sitting by designation.

PER CURIAM:

Robert Liebman began working for Metropolitan Life Insurance Company ("MetLife") as a sales representative in 1985.  When MetLife fired him in 2013, he brought this action, making an age discrimination claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1), as well as a retirement benefits interference claim under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140.  Now before us on appeal, Liebman contests the district court's grant of summary judgment in favor of MetLife.  He argues that the district court erred in holding that he failed to establish a prima facie case under the ADEA because the person who replaced him at MetLife was also over the age of forty.  Liebman also argues that the district court erred in finding that he was not qualified for his position, which is a fact necessary to make a prima facie case under both the ADEA and ERISA.  Finally, Liebman asserts that in granting MetLife's motion for summary judgment, the district court improperly weighed evidence and failed to draw all inferences in the light most favorable to him.  After careful review and with the benefit of oral argument, we reverse and remand.

I.

Over the years since Liebman began working for MetLife in 1985, he held a number of positions in the company.  By 2003, he was the Managing Director of

2

MetLife's West Palm Beach and Boca Raton offices.  In 2007, Liebman hired Neil Weiss as an Agency Sales Director to work directly for him.  Half of Liebman's sales representatives reported to him, and the other half reported to Weiss.

In 2008, Liebman began reporting to Larry Adkins.  Adkins gave Liebman poor evaluations, told him his office was "having a bad year," and placed him on a performance plan.  In his sworn declaration, Liebman says that at the time of this 2008 reassignment, he already knew that Adkins was jealous of his pension plan.  According to Liebman, on at least four or five occasions between 2003 and 2008, Adkins made begrudging remarks about Liebman's benefits package.  Liebman's package was more generous than Adkins's even though Adkins held a higher position in the company.  Then in 2009 MetLife restructured, and Liebman began reporting to Gil Cohen instead of Adkins.  After this restructuring, Liebman had fewer responsibilities, but his salary remained the same.  Weiss also continued to work under Liebman.

In 2011, Cohen contracted with Gene Foxen, an external consultant, to evaluate how MetLife could improve sales.  Although Foxen acknowledged that Liebman's office had "done quite well," he "suspect[ed] much of its overall success [came] from the efforts of Neil Weiss."  Foxen arrived at this suspicion without ever having met with Weiss individually.  Foxen also described Liebman as egocentric.

3

In 2012, MetLife again restructured and cut resources.  These cuts, combined with a significant drop in sales by one of Liebman's top sales agents, led to a poor sales year for Liebman.  Some time during 2012, Adkins became the Regional Vice President of MetLife and Cohen's immediate supervisor.  Also during 2012, Liebman began hearing complaints about his performance.  In a meeting with Cohen and another manager, Liebman was informed of reports from unnamed sources that he was "not as available as [he] need[ed] to be . . . not working, or just not around."  Liebman's sworn declaration states that, during the second quarter of 2012, Adkins again made comments about Liebman's pension plan, this time at a meeting in front of 150 to 200 employees.  In October 2012, Liebman's pay was cut by 10% a week.

In December 2012, Cohen told Liebman that the company was eliminating his position.  Cohen acknowledged in his sworn declaration that this decision was based in part on Adkins's "strong suggestion."  Cohen gave a number of reasons for the decision: (1) MetLife needed to reduce salary expenses and Liebman was one of the highest paid Managing Sales Directors in the company; (2) some of Liebman's responsibilities were duplicative of Weiss's, who cost less and had a better performance evaluation in 2012 than Liebman; (3) Liebman was "detached" and "ineffective" despite warnings about needing to be engaged; and (4) Foxen had

4

suggested that Weiss was the driving force behind the West Palm Beach office's success.

Liebman was given three weeks to interview for another position at MetLife. He did not get that position and was terminated on January 31, 2013. At the time of Liebman's termination, he was 49 years old, Cohen was 45, Adkins was 44, and Weiss was 42. Liebman alleges that, as a result of being terminated before age 55, he lost approximately $90,000 per year in pension benefits starting at age 60. He also alleges that his retiree medical insurance benefits would have accrued at age 55, though MetLife counters that it has discretion to change retiree health insurance.

In May 2013, Liebman filed suit against MetLife, claiming that his discharge violated the ADEA and ERISA. The parties conducted discovery, then MetLife moved for summary judgment on both claims. The district court found that Liebman failed to establish a prima facie case under both the ADEA and ERISA. Specifically, the district court held that Liebman did not state a proper ADEA claim because his replacement, Weiss, was 42 years old and also a member of the protected class. The district court further found that Liebman failed to show he was qualified for his position. The district court also granted summary judgment against Liebman on his ERISA claim based on its holding that Liebman did not

5

show he was qualified for his position and presented only his own self-serving statements about his qualifications for the job.  Liebman timely appealed.

## II.

We review de novo a district court's grant of summary judgment, resolving all reasonable factual disputes in favor of the non-moving party.  Mora v. Jackson Mem'l Found., Inc., 597 F.3d 1201, 1203 (11th Cir. 2010) (per curiam).  Summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); see also Benson v. Tocco, Inc., 113 F.3d 1203, 1207 (11th Cir. 1997).

## A.

The ADEA prohibits employers from firing employees who are forty years or older because of their age.  29 U.S.C. § 623(a)(1); Sims v. MVM, Inc., 704 F.3d 1327, 1331–32 (11th Cir. 2013).  To assert an action under the ADEA, an employee must establish that his age was the "but-for" cause of the adverse employment action.  Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176, 129 S. Ct. 2343, 2350 (2009).  This showing can be made through either direct or circumstantial evidence.  Mora, 597 F.3d at 1204.  When an ADEA claim (like the one before us) is based on circumstantial evidence, we apply the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973).  See Sims, 704 F.3d at 1332.

6

Under McDonnell Douglas, an employee must first establish a prima facie case, which creates a presumption of unlawful discrimination. To make a prima facie case of age discrimination, the employee must show: (1) he was a member of the protected group between the age of forty and seventy; (2) he was subject to an adverse employment action; (3) a substantially younger person filled the position from which he was discharged; and (4) he was qualified to do the job from which he was discharged. Kragor v. Takeda Pharm. Am., Inc., 702 F.3d 1304, 1308 (11th Cir. 2012). Once an employee has established a prima facie case, "the burden shifts to the employer to rebut the presumption of discrimination with evidence of a legitimate, nondiscriminatory reason for the adverse employment action." Id. If the employer proffers a legitimate, nondiscriminatory reason, the burden shifts back to the employee to show that the employer's reason is a pretext. Id.

The district court correctly found that Liebman satisfied the first two prongs of this test because he was a member of the protected class and he was fired. However, the district court erred when it found that Liebman was not replaced by a substantially younger person and that he could not prove he was qualified to do the job from which he had been fired.

The district court determined that Liebman was not replaced by someone substantially younger because Weiss, his replacement, was also over the age of forty and therefore also a member of the ADEA's protected class. But quite to the

7

contrary, the Supreme Court told us in O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 116 S. Ct. 1307 (1996), that "[t]he fact that one person in the protected class has lost out to another person in the protected class is . . . irrelevant, so long as he has lost out because of his age." Id. at 312, 116 S. Ct. 1310. "[T]here can be no greater inference of age discrimination (as opposed to '40 or over' discrimination) when a 40-year-old is replaced by a 39-year-old than when a 56-year-old is replaced by a 40-year-old." Id. We therefore know that "the fact than an ADEA plaintiff was replaced by someone outside the protected class is not a proper element of the McDonnell Douglas prima facie case." Id.; see also Carter v. City of Miami, 870 F.2d 578, 583 (11th Cir. 1989) ("[W]e have declined to hold that a plaintiff's inability to show that he was replaced by someone under forty is an absolute bar to the establishment of a prima facie case.").

The proper inquiry under McDonnell Douglas is whether Weiss was substantially younger than Liebman. See O'Connor, 517 U.S. at 313, 116 S. Ct. at 1310. Weiss is seven years younger than Liebman, and this difference qualifies as substantially younger. See Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1360 (11th Cir. 1999) (five years is enough); Carter v. DecisionOne Corp., 122 F.3d 997, 1003 (11th Cir. 1997) (per curiam) (three years is enough); Carter, 870 F.2d at 583 (four years is enough). Viewing the facts in the light most

8

favorable to Liebman, the district court erred in finding that the third prong of the McDonnell Douglas test was not met.

We must also address the district court's finding that Liebman was not qualified for the job from which he was discharged, because in 2012 "he was not performing as expected." In assessing a plaintiff's qualification for a position, we examine his skills and background. Damon, 196 F.3d at 1360. However, "if a plaintiff has enjoyed a long tenure at a certain position, we can infer that he or she is qualified to hold that particular position." Id. Liebman worked for MetLife for 27 years. Although MetLife is correct that Liebman held the specific title of "Managing Sales Director" for only three years before he was fired, the record demonstrates that he performed substantially similar duties for the preceding six years as "Managing Director." Liebman had therefore been in virtually the same position for a total of nine years before his termination. Nine years in the same position, and nearly three decades at the company, is long enough to support the inference that he was qualified for his job.

Beyond that (and viewing the facts in the light most favorable to Liebman), there is significant evidence that he was qualified for his position. For example, he received many leadership awards during his 27 years at MetLife. In 2009, 2010, and 2011, his was the top branch for MetLife's Cypress Financial Group. The district court characterized Liebman's reliance on this evidence as presenting "self-

9

serving statements" that he was a wonderful employee.  But even if a party's statements "are self-serving, . . . that alone does not permit us to disregard them at the summary judgment stage."  Feliciano v. City of Miami Beach, 707 F.3d 1244, 1253 (11th Cir. 2013); see also Price v. Time, Inc., 416 F.3d 1327, 1345 (11th Cir. 2005) ("Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.").  The district court erred in disregarding Liebman's sworn statements and in finding that Liebman failed to establish that he was qualified for the position.

Finally, the justifications offered by MetLife for Liebman's termination—namely that the company needed to reduce its budget for salaries and that many of Liebman's responsibilities were duplicative of Weiss's—were not a proper basis for rejecting Liebman's prima facie showing.  Employer justifications become relevant only after the plaintiff has made his prima facie case.  See Kragor, 702 F.3d at 1308.  When it found that Liebman was not qualified for his position based on MetLife's proffered reasons for firing him, the district court conflated the burden shifting stages of the McDonnell Douglas framework.

Liebman has established a prima facie ADEA case.  We therefore vacate the district court's order granting summary judgment on Liebman's ADEA claim and remand for consideration of whether summary judgment is appropriate under the McDonnell Douglas framework.

10

B.

We turn next to the district court's grant of summary judgment on Liebman's ERISA claim.  ERISA makes it unlawful for an employer "to discharge . . . a [benefit plan] participant . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled."  29 U.S.C. § 1140; see also Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1222 (11th Cir. 1993).  As with an ADEA claim, a plaintiff can establish an ERISA claim by either direct evidence or circumstantial evidence under the McDonnell Douglas framework.  Clark, 990 F.2d at 1223.  To establish a prima facie ERISA case, an employee must show that he: (1) was entitled to ERISA protection; (2) was qualified for his position; and (3) was discharged under circumstances that give rise to an inference of discrimination.  Id.  Once a plaintiff has established a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  Id.  The burden then shifts back to the plaintiff to establish the employer's reason was pretext.  Id.

Relying on its discussion of Liebman's ADEA claim, the district court held that Liebman was not qualified for his position at MetLife.  According to the district court, then, Liebman's ERISA claim failed for lack of a prima facie case.  But for the reasons discussed in connection with Liebman's ADEA case, we believe the district court erred here as well.

11

The district court did not address whether Liebman was discharged under circumstances that give rise to an inference of discrimination.  However, in his sworn declaration, Liebman pointed to four or five occasions between 2003 and 2008 when Adkins suggested he was jealous of Liebman's pension plan.  Liebman also attested that Adkins publicly singled him out about his pension in front of 150 to 200 employees in 2012.  Adkins's comment on Liebman's pension plan in front of a large group is corroborated by Samir Abdullah, a former MetLife sales representative.  These statements offer support for Liebman's claim that he was discharged under circumstances that give rise to an inference of discrimination.

MetLife argues here, as it did before the district court, that any statements in Liebman's declaration about Adkins's jealous comments should be disregarded because they directly contradict his deposition testimony.  It is of course true that "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact [for summary judgment], that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."  Van T. Junkins & Assoc., Inc. v. U.S. Indust., Inc., 736 F.2d 656, 657 (11th Cir. 1984).  MetLife also moved to strike Abdullah's sworn declaration because Abdullah was not identified as a witness by the witness disclosure deadline.

12

After granting summary judgment to MetLife, the district court dismissed all pending motions as moot. As a result, it never ruled on whether Liebman's statements in his sworn declaration contradicted his deposition. Neither did it rule on MetLife's motion to strike the Abdullah declaration. However the declarations offered by Liebman and Abdullah could create a genuine issue of material fact with respect to whether Leibman was discharged under circumstances that give rise to an inference of discrimination. For that reason, the district court erred by granting judgment in favor of MetLife before deciding on the admissibility of the Liebman and Abdullah declarations.

We therefore vacate the grant of summary judgment on Liebman's ERISA claim and remand to the district court. Before considering whether Liebman can establish a prima facie case under ERISA, the district court should rule on the admissibility of Liebman's statements and Adbullah's declaration.

### III.

We vacate the grant of summary judgment on Liebman's ADEA and ERISA claims and remand for the district court's consideration consistent with this opinion.

**VACATED AND REMANDED.**

13