[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-10909
Non-Argument Calendar

_____

D.C. Docket No. 2:17-cv-00288-FtM-PAM-UAM

RICHARD C. REED, JR.,

Plaintiff-Appellant,

versus

FORNEY INDUSTRIES, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 28, 2020)

Before MARTIN, ROSENBAUM, and HULL, Circuit Judges.

PER CURIAM:

Richard C. Reed, Jr., appeals the grant of summary judgment to defendants

in his lawsuit for age discrimination, disability discrimination, and retaliation

under the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq.

1

("ADEA"), the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.

("ADA"), and the Florida Civil Rights Act,  Fla. Stat. § 760.01, et seq. ("FCRA").

After careful review, we affirm.

## I.

Reed began working for Forney Industries in 2003 at the age of 46.  Forney

reorganized its sales force in 2013 and Reed became a retail account representative

for the East Coast sales team.  Reed began reporting directly to John Lambert, the

director of East Coast sales, who in turn reported to Pat Proctor, the vice president

of retail sales.  Proctor reported to Ron Ferguson, the chief sales and marketing

officer, who reported to Steven Anderson, the president and chief executive officer

of Forney.

While Reed's job performance was generally satisfactory, he did receive

some criticism from his supervisors.  In February 2014, Lambert informed Reed

that he was substantially meeting expectations but needed to improve in several

areas, including his "order miss rate," his expenses, and his mentorship and

encouragement of other members of his team.  In July 2014, Reed complained to

Proctor, who was now his immediate supervisor, that he was unfairly denied an

earned bonus and paid time off and that his co-workers were "a bunch of slackers

who pull [him] down with them."  Proctor responded by noting that Reed had

missed revenue goals in two recent quarters and suggested that he was free to leave

2

the company if he felt it employed slackers.  Proctor later testified that, at the time, he was concerned by Reed's tone and negative attitude about Forney.  In March 2015, Proctor reviewed Reed's performance and found that he was generally meeting expectations and exceeding expectations in several areas.  In June 2015, Todd Reasonover, the new director of East Coast sales, met with Reed. Reasonover testified that he was "shocked" by how negatively Reed discussed Forney during their first meeting.

On July 16, 2015, Reed injured his knee in an accident unrelated to his employment.  He missed a few weeks of work for necessary surgery and received disability benefits during his recovery.  He returned to work on August 17, 2015.

Some performance issues continued after Reed's return from leave.  On August 22, 2015, Reasonover requested that Reed submit a sales "pipeline" of potential new business, which had been due in June, before his injury.  Reasonover requested the sales pipeline again on September 14, 2015.  It is not clear if Reed ever provided the sales pipeline.  On September 15, 2015, Reasonover emailed Reed noting that his overall revenue was down 8.5% over the previous year and that he was behind compared to budget.  On September 22, 2015, Reasonover and Proctor met with Reed in person to discuss his decreased sales and lack of communication.  Reasonover followed up on their meeting with a copy of Reed's job description and areas for improvement, which included the request that he and

3

Reed speak more frequently to discuss Reed's work and progress. When Reed's performance did not improve, Reasonover and Proctor determined that he should be placed on a Performance Improvement Plan.

On December 17, 2015, Reasonover contacted Reed to schedule an in-person meeting. Reed responded:

> You're kidding right 12.28.15, the broken up holiday week?
> The week of 1.4.15 I might be traveling to Baltimore to be with my family as my grandson is getting an operation. I haven't got a definitive answer from my daughter yet.
> Week of 1.11.15 is when the world returns to normal for me.

Reasonover replied that he "t[ook] offense" to Reed's response and said that because Reed did not appear to have requested paid time off, Reasonover "expect[ed] a response." Reed responded, copying Proctor, Anderson, and human resources manager Cheryl Pansire:

> I ask if you kidding and this is the response that I elicit from you?
> Your reply is ironic since you mentioned to me previously about the poor relationship you had with your last superior.
> Also thank you for your compassion and empathy for my family.

Proctor then forwarded this email exchange to Ferguson, who commented that he thought Reed should be terminated, but that he wanted input from others before making a decision. Reasonover, Ferguson, and Proctor agreed that there were sufficient grounds to terminate Reed.

4

On December 29, 2015, Ferguson met with Reed in Florida and terminated him based on his continued performance issues and his email exchange with Reasonover.  Reed was later sent a separation notice stating that he was terminated due to his "lack of responsiveness to management requests for [his] work schedule," insubordination, and his "continued decline in achieving sales goals and lack of detailed plans for improvement as requested at a face to face meeting in September."  Forney replaced Reed with Steven O'Neil, who was 51 years old at the time—approximately seven years younger than Reed.

Reed sued Forney for age and disability discrimination under the FCRA in Florida Circuit Court on April 13, 2017.  Forney removed the case to the Middle District of Florida and Reed amended to add federal claims under the ADEA and ADA.  On February 11, 2019, the district court granted Forney's motion for summary judgment on all claims.  Reed timely appealed.

## II.

We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor.  Furcron v. Mail Ctrs. Plus, LLC, 843 F.3d 1295, 1303–04 (11th Cir. 2016).  We will affirm if there is no genuine dispute

5

as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

## III.

Under the ADEA, it is unlawful for an employer to discharge an employee over the age of 40 because of his age. See 29 U.S.C. § 623(a)(1); Liebman v. Metro. Life Ins. Co., 808 F.3d 1294, 1298 (11th Cir. 2015) (per curiam). To assert a claim under the ADEA, a plaintiff must show that his age was the but-for cause of the adverse employment action. Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176, 129 S. Ct. 2343, 2350 (2009). ADEA claims based on circumstantial evidence are analyzed under the burden-shifting framework established in McDonnell Douglas Corporation v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973). See Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc). Under the McDonnell Douglas framework, the plaintiff must first establish a prima facie case of discrimination. Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1432 (11th Cir. 1998). The employer then must respond with a legitimate, nondiscriminatory reason for its actions. Id. If the employer successfully produces such a reason, the plaintiff must prove that the employer's reason was a pretext to mask unlawful discrimination. Id. Claims for age discrimination under the FCRA are analyzed using the same framework as age discrimination claims under the

6

ADEA.  Zaben v. Air Prods. & Chems., Inc., 129 F.3d 1453, 1455 n.2 (11th Cir. 1997) (per curiam).

## A.

The district court erred in holding that Reed failed to make a prima facie showing of age discrimination.  To make such a case, a plaintiff must show that: (1) he was a member of the protected group between age forty and seventy; (2) he was subject to an adverse employment action; (3) a substantially younger person filled the position from which he was discharged; and (4) he was qualified to do the job from which he was discharged.  Liebman, 808 F.3d at 1298.  The district court concluded that Reed was a member of the protected group, was subject to an adverse employment action, and was at least minimally qualified to do the job from which he was discharged.  However, it found that the age difference between Reed, who was 58 years old at the time of his discharge, and O'Neil, who was 51 years old at the time he replaced Reed, was "insufficient to meet the third element of Reed's prima facie case given that the record is otherwise devoid of evidence of age-based animus."  In doing so, the district court improperly required evidence of age-based animus beyond what was required at the prima facie stage.  The proper inquiry at this stage was only whether O'Neil was "substantially younger" than Reed.  Under our precedent, an age difference of seven years is sufficient to meet

7

this requirement and create the inference of age discrimination. See id. at 1299 (holding a difference of seven years was sufficient to meet the "substantially younger" requirement); Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1360 (11th Cir. 1999) (five-year difference was sufficient).

Forney contends that, even assuming a substantial difference in age between Reed and O'Neil, Reed still failed to make out a prima facie case of age discrimination because he was not qualified to do the job from which he was discharged. However, this record reveals no genuine factual dispute about whether Reed was qualified for his position. At the prima facie stage, we look to a plaintiff's skills and background to determine whether he was qualified. Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1227 (11th Cir. 1993). Reed's performance reviews establish that he met expectations and "consistently demonstrate[d] the required job skills" of his position. This, taken with his long tenure at Forney, was sufficient to show that Reed was qualified for his position. See Damon, 196 F.3d at 1360 (holding that a long tenure supports the inference that an individual is qualified to hold his particular position). While Forney points to Reed's documented performance issues, which placed him slightly below "Meets Expectations" in February 2014, this raises a question separate from whether he was qualified for his position. We consider allegations of poor performance, which may be relevant to whether the employer's proffered nondiscriminatory

reasons for termination were pretextual, "only <u>after</u> a prima facie case has been established." <u>Id.</u> We accept from this record that Reed established a prima facie case of age discrimination.

## B.

The district court held that, even if Reed had made a prima facie showing of age discrimination, he failed to show that Forney's proffered non-discriminatory reasons for firing him were pretextual. We agree. Forney claims that Reed was discharged because of poor performance and insubordination, and a reasonable factfinder would not find these reasons were pretextual.

Once a defendant has offered a legitimate, non-discriminatory reason for an adverse employment action, the employee must show that the reason was a pretext and that unlawful discriminatory animus was the actual motivation. <u>Chapman</u>, 229 F.3d at 1024–25. Proof that the proffered explanation is false or not worthy of credence may be "quite persuasive" evidence from which the trier of fact can reasonably infer "that the employer is dissembling to cover up a discriminatory purpose." <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 147, 120 S. Ct. 2097, 2108 (2000). However, when plaintiffs challenge dismissal for poor performance, "we must be careful not to allow [them] simply to litigate whether they are, in fact, good employees." <u>Rojas v. Florida</u>, 285 F.3d 1339, 1342 (11th Cir. 2002) (per curiam).

9

The record amply supports Forney's account of Reed's discharge. It is also devoid of any evidence of discriminatory animus. Forney has shown that Reed had at least some performance issues in the months prior to being fired. Initially, his superiors were not planning to terminate him on the basis of his performance. Reasonover and Proctor communicated with Reed about his performance on several occasions and, when he demonstrated limited improvement, Proctor planned to place him on a performance improvement plan to address his concerns. But Reed's December 17, 2015 emails were the "final straw" and Reed was fired before he was placed on the improvement plan.

Reed argues that Forney's proffered reasons were pretextual principally by claiming that his performance was adequate, and he "flatly denies" that his supervisors ever discussed performance issues with him.[1] But his claims are belied by the record, which does not show that the reasons proffered by Forney were dishonest. Rather, the record shows that in September and October Reed's superiors expressed concern over his performance via email, including decreased sales numbers and revenue in his region and lack of communication with senior

---

[1] In his brief Reed admits that he had been criticized for his work performance prior to his discharge, arguing that his December 17, 2015 emails were reasonable in light of Reasonover's history "of criticizing Mr. Reed's work performance without legitimate justification" including Reasonover's "August accusation of low sales" and "his October warning that Mr. Reed start performing [his] job description."

10

management.  In any case, Reed's attempts to litigate whether he was a sufficiently productive employee amount to little, because Forney employees consistently testified that Reed was not fired solely because of his poor performance.  Rather, Forney employees testified that Reed's emails were the "key factor" in his discharge.  They say, but for those emails, Reed would not have been discharged in December 2015 and would instead have been put on a performance improvement plan.[2]

Reed challenges the district court's finding that "a plain reading of [the December 17, 2015 emails] support[s] Forney's finding of insubordination."  We need not decide whether a jury would characterize Reed's emails as insubordinate, because our inquiry is not whether the decision to discharge Reed was correct, but rather whether it was honest.  Rojas, 285 F.3d at 1342; see also Holifield v. Reno, 115 F.3d 1555, 1565 (11th Cir. 1997) (per curiam) ("The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance."), abrogated on other grounds by Lewis v. City of Union City, 918 F.3d 1213 (11th Cir. 2019) (en banc).  Here, the record firmly supports the

---

[2] For the same reason, Reed's argument that he was treated differently than other employees because he was not issued multiple written warnings and placed on a performance improvement plan fails.  The undisputed evidence submitted by Forney shows that, had Reed not sent the December 17, 2015 emails, he would likely have been placed on a performance improvement plan.

11

conclusion that Reed's supervisors perceived his emails to be sufficiently insubordinate to warrant discharging him, and Reed points to no evidence disputing this conclusion. Reed's claim that a reasonable juror could find otherwise amount to little more than his own uncorroborated suspicion. This is not sufficient to create a dispute of fact for the jury. See Sturniolo v. Sheaffer, Eaton, Inc., 15 F.3d 1023, 1026 (11th Cir. 1994) (holding that mere suspicion of age discrimination unsupported by specific facts was insufficient to create genuine issue of material fact).

Reed picks at the edges of the rationale for his discharge with little success. He argues that Ferguson gave inconsistent reasons for firing him, as he "intended to attempt terminating Reed for poor performance and only relied on insubordination as a fallback position in light of Reed's rebuttal that his numbers did not demonstrate poor performance." But since the record supports both of these reasons for discharging Reed, there is no inconsistency. Reed also argues that, in the wake of the December 17, 2015 emails, Ferguson or other management should have contacted him to get his side of the story. But he cites no controlling authority for this proposition. Given the content of Reed's emails and the fact that his managers had already been concerned about his negative attitude towards Forney and his coworkers, we do not think that management's failure to seek

12

further explanation tends to show that their proffered reasons for terminating him were pretextual.

Reed also attempts to state a "cat's paw" theory of liability. A plaintiff may prove cat's paw liability by showing that an unbiased decision-maker was influenced by or acted on the recommendation of a biased subordinate. See Sims v. MVM, Inc., 704 F.3d 1327, 1335 & n.6 (11th Cir. 2013); Godwin v. WellStar Health Sys. Inc., 615 F. App'x 518, 529 (11th Cir. 2015) (per curiam) (unpublished). Reed claims that the record is "replete with evidence of bias on the part of Reasonover," who he claims (1) approached human resources and said he thought Reed was insubordinate, (2) drafted a performance improvement plan for Reed, and (3) first brought up terminating Reed. But under a cat's paw theory of liability, the plaintiff must show that the individual influencing or recommending adverse employment was biased because of discriminatory animus. See Godwin, 614 F. App'x at 528. These facts do not show that Reasonover's actions were motivated by discriminatory animus against Reed.

Reed's "convincing mosaic" theory of liability also fails. A plaintiff may create a triable issue of fact by presenting "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011) (quotation marks and footnote omitted). His argument, however, amounts to

13

little more than a recitation of his attempts to show pretext, with the added consideration that his replacement was seven years younger than him. But while this age difference is sufficient to make out a prima facie case of age discrimination, it is not sufficient to show discriminatory intent. See Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1471 (11th Cir. 1991) (holding that an isolated instance of preferring a younger employee is not sufficient to show a pattern of age discrimination). Taken together, the record does not present sufficient circumstantial evidence for a jury to infer intentional discrimination by Forney.

## IV.

Finally, Reed claims that Forney retaliated against him for requesting medical leave for treatment of his knee injury. The ADA prohibits retaliation "against any individual because such individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a). ADA retaliation claims are analyzed under the same framework as Title VII retaliation claims: first, a plaintiff must establish a prima facie case of retaliation by showing (1) statutorily protected expression; (2) adverse employment action; and (3) a causal link between the protected expression and the adverse action. Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1287 (11th Cir. 1997). Then the burden shifts to the employer to show a legitimate, non-discriminatory reason for its actions. Id. If the

14

employer makes this showing, the plaintiff must show that the proffered non-discriminatory reason was pretextual.  Id.   Disability discrimination and retaliation claims under the FCRA are analyzed under the same framework as under the ADA.  See Chanda v. Engelhard/ICC, 234 F.3d 1219, 1221 (11th Cir. 2000).

The district court did not err in holding that Reed failed to present evidence sufficient to show a causal link between his request for time off in July 2015 and his discharge in December 2015.  Over four months passed between Reed's return from medical leave and his discharge, which is not sufficiently proximate to make a prima facie case of causation.  See Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir. 2006) (holding that a three-month gap between the protected action and alleged retaliation was not sufficiently proximate to show causation).  Reed points us to Robinson v. Southeastern Pennsylvania Transportation Authority, 982 F.2d 892 (3d Cir. 1993), and argues that "a pattern of antagonism or retaliatory motive" is sufficient to make a prima facie showing of a cause.  This may be, but in Robinson, the plaintiff was subjected to a "constant barrage of written and verbal warnings" and "disciplinary action, all of which occurred soon after [the protected expression] and continued until his discharge."  Id. at 895.  The fact that Reasonover contacted Reed with work-related questions during his medical leave does not approach this level of antagonism and, in any case, there was a four-month gap between these calls and Reed's discharge.

15

Nothing in the record connects Reed's medical leave with Forney's decision to terminate him.  And, as discussed above, Reed failed to produce evidence which would allow a jury to find that Forney's proffered reasons for terminating him were pretextual.[3]

**AFFIRMED.**

---

[3] Reed adopts and incorporates his "cat's paw" and "convincing mosaic" theories of liability largely unchanged into his retaliation claims.  We reject them for the same reasons already described.