[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 4, 2008
THOMAS K. KAHN
CLERK

No. 08-11438
Non-Argument Calendar

_____

D. C. Docket No. 06-00136-CV-4-RH-WCS

CAESAR WHITE, JR.,

Plaintiff-Appellant,

versus

DEPARTMENT OF TRANSPORTATION
STATE OF FLORIDA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(September 4, 2008)**

Before TJOFLAT, BLACK and FAY, Circuit Judges.

PER CURIAM:

Caesar White, Jr., an African American proceeding pro se, appeals the district court's grant of the State of Florida Department of Transportation's ("DOT") motion for summary judgment on White's complaint alleging failure to hire based on his race and color, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq., ("Title VII"). For the reasons set forth below, we affirm.

## I.

In a Title VII complaint, White alleged that he submitted an application to the DOT's Motor Carrier Compliance Office ("MCCO") for a position as a Law Enforcement Compliance Officer. The MCCO mailed him a "conditional offer of employment" and a notice to report for polygraph testing. He "passed" the polygraph test, and the administering officer informed him that he would be notified shortly of the next step in the hiring process. Approximately one month later, however, the MCCO's recruiter contacted White and requested that White submit a certain document. Although White already had submitted the document with his application, he complied. Approximately two weeks later, another officer contacted White and requested the same document. White again complied. Thereafter, he did not hear anything from the MCCO "for months." He made telephone calls, wrote letters, and sent emails to the MCCO for information on the

delay in the hiring process, but received no return communication. When the MCCO extended its conditional offer of employment, it was not aware of White's race or color. When White reported for polygraph testing, however, the MCCO became aware of his race and color and, thereafter, ceased communication. Accordingly, White filed a charge of discrimination against the MCCO with a state agency. The MCCO then sent White a letter stating that he was ineligible for the position he sought, indicating that it had misplaced the original notice of disqualification and was re-sending a copy, and explaining that White was not hired because his polygraph test revealed that he was not qualified for the position in question. White argued that, based on these facts, it was evident that the MCCO, upon learning of White's race and color, decided not to hire him and used "intentional delaying tactics" and "pretext[ual]" reasons to mask its discrimination.

The DOT filed a motion for summary judgment, pursuant to Fed.R.Civ.P. 56(c), arguing that White could not make a prima facie showing of racial discrimination because he was not qualified for the position in question and could not point to a similarly situated applicant outside his protected class who was treated more favorably. White was not hired because his polygraph test answers revealed that he had been dismissed from the Mississippi Highway Patrol training school because "he did not possess the right attitude to be a trooper" and had been

3

disciplined three times by, and ultimately received a court martial for disobeying lawful orders from, the U.S. Marine Corps.  Also, the MCCO previously had not hired 7 Hispanics, 26 whites, and 2 others because of their work histories, or 1 Hispanic and 2 whites because of their military discipline histories.

Along with its motion for summary judgment, the DOT submitted, inter alia, the affidavit of Major Vicki Cutcliffe, the Chief of Law Enforcement Support for the MCCO.  Therein, Cutcliffe stated that her position involved helping to make hiring decisions for the MCCO.  The MCCO's hiring process involved the following steps: (1) the potential employee submitting an initial application, (2) the MCCO extending a conditional offer of employment, (3) the potential employee undergoing polygraph testing, and (4) the MCCO reviewing the polygraph test, with the help of an "Automatic Disqualification List," and determining wether the potential employee was qualified.  This process was "strictly followed with all applicants without exception," even when a potential employee included information in his initial application that could disqualify him from MCCO employment.  This was because the polygraph test could reveal additional information, not apparent from the initial application, that the MCCO would need to take into account.

Cutcliffe also stated that the MCCO's recruitment office asked White to

4

submit an initial application as part of its qualified minority recruitment efforts. In White's initial application, he noted his race and included a photograph of himself. Thus, the MCCO knew of White's race and color, and nevertheless sought to employ him, during the entire hiring process. When White submitted his initial application, he noted therein details regarding his training school and military work history, such that the MCCO became aware of these potentially disqualifying characteristics. The MCCO nevertheless sent him a conditional-offer letter, in keeping with protocol. In the letter, White was warned that his actual employment was contingent on passing to the satisfaction of the MCCO the polygraph test. After reviewing White's polygraph test, the MCCO decided not to hire him because his past disciplinary issues rendered him unqualified for DOT employment pursuant to the Automatic Disqualification List.

The DOT further submitted: (1) White's initial application, which included a picture of White and in which White indicated that he was "dropped" from the Mississippi Highway Patrol training school because he did not have the right attitude to be a state trooper and was disciplined three times and ultimately honorably discharged from the U.S. Marine Corps; (2) White's polygraph test, showing that he indicated that he was accepted into the Mississippi Highway Patrol training school as part of its minority recruitment efforts, was asked his opinion on

the treatment of the black trainees, and was released when his superiors did not like his truthful answers, and that he was honorably discharged from the U.S. Marine Corps after being acquitted of disobeying a lawful order, but convicted on "lesser charges" related to uniform infractions; (3) the MCCO's Automatic Disqualification List, stating that (a) "[a]pplicants who have received a discharge from any of the Armed Forces of the United States for unsuitability, unfitness, or other misconduct reasons under honorable conditions may be evaluated for job related behavior and may be disqualified where the discharge indicates factors that may adversely affect job performance," (b) "[o]ther factors relating to work history, compliance with law and similar job-related areas may be considered in evaluating the applicant's fitness for employment," and (c) "[d]isciplinary action in prior employment, the military, or educational institutions for behavior that would be either a criminal act or other major violation of [DOT] disciplinary standards will be a basis for evaluation;" (4) a list of law enforcement officers hired by the MCCO in the year of White's application, indicating that the MCCO hired 17 whites, 3 Hispanics, and 1 black during this time; and (5) a list of applicants rejected by the MCCO in the year of White's application, indicating that the MCCO rejected 26 whites, 7 Hispanics, 2 others, and 25 blacks because of their "Work History" and rejected 2 whites and 1 Hispanic because of their "Military

6

Record" during his time. White filed a cross-motion for summary judgment, arguing that he was qualified for the position in question and that the MCCO's proffered reasons for its hiring decision were pretextual.

The magistrate recommended granting the DOT's motion for summary judgment and denying White's cross motion for summary judgment. The magistrate reasoned that White's dismissal from the Mississippi Highway Patrol training school because he did not have the proper attitude to be a state trooper and discipline by the U.S. Marine Corps because he disobeyed lawful orders, facts that White did not dispute, constituted a valid basis for rejecting White's employment application. Accordingly, White was not qualified for the position. Also, the record demonstrated that 26 white applicants were rejected based on their work histories and 2 white applicants were rejected based on their military histories. Accordingly, White was not treated differently from non-minorities. Therefore, White could not establish a prima facie case of discrimination, and the question of whether the MCCO's proffered reasons for his hiring decisions were pretextual was moot. White objected to the report and recommendation and reiterated previous arguments. The district court conducted a de novo review of the issues raised by White and accepted and adopted the magistrate's report and

recommendation.[1]

## II.

We review the district court's order granting summary judgment de novo. Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1357 (11th Cir.1999). Such a grant of summary judgment is appropriate only "where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id. at 1358 (citing Fed.R.Civ.P. 56(c)). In determining whether summary judgment is appropriate, we review the record and draw all reasonable inferences in the light most favorable to the non-moving party. Id.

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In reviewing Title VII claims of racial discrimination supported by circumstantial evidence, we use the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under that framework, the plaintiff has the burden of establishing a prima facie case of racial discrimination. Id. at 802, 93 S.Ct. at 1824. To meet this

---

[1] White argues on appeal that the district court committed reversible error in failing to address his objections to the report and recommendation. This argument is without merit, as the district court plainly stated that it had conducted a de novo review of the issues raised.

initial burden, the plaintiff must show, by a preponderance of the evidence, that: (1) he belongs to a protected class; (2) he was subjected to an adverse employment action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job. See Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) (considering racial discrimination). If the plaintiff successfully establishes a prima facie case, there is a presumption of discrimination. McDonnell Douglas Corp., 411 U.S. at 802-803, 93 S.Ct. at 1824. The burden then shifts to the defendant to rebut this presumption by articulating a legitimate, non-discriminatory reason for the complained-of action. Id. If the defendant fails to meet this burden, then we must award judgment to the plaintiff as a matter of law. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509, 113 S.Ct. 2742, 2748, 125 L.Ed.2d 407 (1993). If the defendant meets this burden, then the burden shifts to the plaintiff to show that the articulated reason was a pretext for discrimination. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255-56, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981).

### III.

The district court did not err in granting the DOT's motion for summary judgment. See Damon, 196 F.3d at 1357. White failed to establish a prima facie case of racial discrimination. See McDonnell Douglas Corp., 411 U.S. at 802, 93

9

S.Ct. at 1824. The parties do not dispute that White belonged to a protected class or suffered an adverse employment action. See Holifield, 115 F.3d at 1562. White did not, however, demonstrate that he was qualified for the position. See id. The MCCO's Automatic Disqualification List stated that the MCCO should consider an applicant's work history, discharge from the military, and discipline history in determining if the applicant was qualified for MCCO work. In his initial application and during his polygraph test, White indicated that he had been dismissed from the Mississippi Highway Patrol training school because of his attitude and was disciplined by the U.S. Marine Corps. Given these answers, the MCCO could have found that White was not qualified for the position in question under its Automatic Disqualification List. Because White was not qualified for the position, he could not establish a prima facie case of racial discrimination, and the issues of whether the MCCO treated similarly situated applicants outside his protected class more favorably or whether the MCCO's proffered reason for its hiring decision was pretextual are moot. See Holifield, 115 F.3d at 1562. Texas Dep't of Cmty. Affairs, 450 U.S. at 255-56, 101 S.Ct. at 1094. We note, though, that, because the MCCO knew of White's race and color from his initial application, any argument that it allowed him to proceed only because it believed him to be white at the time is without merit. Accordingly, the district court did not

10

err in granting the DOT's motion for summary judgment. See Damon, 196 F.3d at 1357.

We note that White also argued before the district court, and on appeal, that the only reason he could not demonstrate that similarly situated applicants outside his protected class were treated more favorably than him was because the DOT refused to produce the polygraph tests of previous applicants and the magistrate refused to compel the DOT to do so. Indeed, White argues on appeal that the magistrate's treatment of the issue constituted reversible error. The record demonstrates that White filed a motion to compel the DOT to produce these materials. The magistrate initially denied the motion, but, on White's motion for reconsideration, ordered the DOT to produce redacted copies of the 124 previously administered polygraph tests if White paid the costs of redacting and copying by a certain date. White notified the DOT that he only would pay for copying and redacting the polygraph tests for those applicants outside his protected class who ultimately were hired, and sent a money order for this amount. The DOT responded that the money order was deficient and that it would not produce the polygraph tests. The magistrate did not abuse his discretion in his treatment of the motion to compel, as its order was reasonable. See Hinson v. Clinch County, Georgia Bd. of Educ., 231 F.3d 821, 826 (11th Cir. 2000) (regarding a complaint

11

brought under Title VII and holding that we review denials of a plaintiff's motion to compel discovery for abuse of discretion); Holloman v. Mail-Well Corp., 443 F.3d 832, 837 (11th Cir. 2006) (regarding a complaint brought under the Employee Retirement Income Security Act and holding that "a district court is allowed 'a range of choice'" and we "will not second-guess the district court's actions unless they reflect a 'clear error of judgment'").  Also, because the polygraph tests only would be relevant to showing that similarly situated applicants were treated more favorably, and this point is moot, as discussed above, any error resulting from the DOT's refusal to produce the documents was harmless.  Because the district court did not err in this manner and did not abuse its discretion in granting the DOT's motion for summary judgment, we affirm.[2]  See Damon, 196 F.3d at 1357.

**AFFIRMED.**

---

[2] White further argued on appeal that the magistrate erred in granting the DOT extra time to file a statement of disputed facts that it forgot to file with its motion for summary judgment. Any error committed by the magistrate in doing so also was harmless, as the DOT's statement of disputed facts stated simply that the DOT disagreed with White's statement of the facts.