[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-13125
Non-Argument Calendar
_____

D.C. Docket No. 6:13-cv-00075-JRH-GRS

LAKEITA GRIMES,

Plaintiff-Appellant,

versus

THE BOARD OF REGENTS OF THE UNIVERSITY
SYSTEM OF THE STATE OF GEORGIA, etc., et al.,

Defendants,

SAMUEL TODD,
individually and in his official capacity as a
professor and de facto admission director
of the Jack N. Averitt College of Graduate
Studies at Georgia Southern University,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(May 24, 2016)

Before JORDAN, JULIE CARNES and JILL PRYOR, Circuit Judges.

PER CURIAM:

Lakeita Grimes, proceeding *pro se*, appeals following the district court's partial grant of the defendants' motions to dismiss her complaint and grant of defendant Samuel Todd's motion for summary judgment. Grimes's complaint raised federal claims of race and sex discrimination and retaliation, under 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988; Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*; as well as state law claims, all arising out of the denial of her application for admission to the Sports Management Graduate Program (the "Sports Management Program") at Georgia Southern University ("GSU").

On appeal, Grimes challenges only the dismissal of (1) her § 1981 claim based on GSU's failure to admit her into the Sports Management Program as barred by the statute of limitations and (2) her § 1981 retaliation claim against Todd on the merits.[1] After a thorough review of the record and consideration of the parties' briefs, we affirm.

---

[1] All but the § 1981 claims were dismissed without prejudice as abandoned at the motion to dismiss stage, and Grimes does not challenge their dismissal on appeal. Accordingly, we need not address these claims. *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) ("[I]ssues not briefed on appeal by a *pro se* litigant are deemed abandoned."). Grimes also appeals the denial of her first motion to amend her complaint, in which she sought to clarify the nature of her § 1981 claims. She states no claim of error, however, because the district court allowed that amendment.

# I. BACKGROUND[2]

Grimes is an African-American woman who applied for, but was denied, admission into GSU's graduate Sports Management Program. For regular admission into the Sports Management Program, GSU required a cumulative undergraduate grade point average ("GPA") of 2.75 and test scores from a standardized graduate admittance test, such as the Miller Analogy Test ("MAT"). Applicants who chose to submit MAT scores needed a "score [of] 44" for regular admission into the program. Doc. 44-5 at 54.[3] GSU also permitted provisional admission into the program. For provisional admission into the Sports Management Program, GSU required an undergraduate GPA of 2.5 and a "36 MAT." *Id.* In addition to GPA and test scores, GSU gave added weight to an applicant's work experience in the sports management industry.

Grimes applied for admission to the Sports Management Program in the summer of 2009. In support of her application, she submitted her score on the MAT. Pearson, Inc., the company that structured, administered, and scored the MAT, had started using three-digit scaled scores rather than two-digit raw scores when Grimes took the test. According to Pearson's technical manual, Pearson rendered the scaled scores for the test. It was then "the responsibility of each

---

[2] We derive the facts herein from the evidence in the record, which we view in the light most favorable to Grimes, as we must on her appeal of the grant of summary judgment in favor of Todd. *See Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1211 (11th Cir. 2008).

[3] Citations to "Doc." refer to docket entries in the district court record in this case.

3

school to determine how it uses the MAT scores." *See* Doc. 56-1 at 14-15 (emphasis removed). To determine whether Grimes's three-digit MAT score sufficed for admission at GSU, one needed to use a table developed by Pearson to convert the three-digit score to the two-digit score GSU would consider.

Grimes's cumulative GPA in July 2009 was 2.53 and thus satisfied the Sports Management Program's minimum requirement, but GSU determined that her MAT score and work history were insufficient for either regular or provisional admission. Her MAT three-digit scaled score was 386, which, according to Pearson's conversion table, converted to between a 31 and a 34 raw score. Her score placed her in the 32nd percentile of all test takers. According to GSU, with a 34 MAT score or 32nd percentile rank, Grimes fell below the provisional admission requirement and far below the requirement for regular admission. GSU also determined that Grimes's work experience, which included volunteering at one GSU football game and an NFL Punt, Pass, and Kick competition, was insufficient to justify provisional admission. For these reasons, the Sports Management Program rejected Grimes's application on June 22, 2009 and denied the appeal of her rejection on August 14, 2009.

Grimes believed that her MAT score was sufficient for provisional admission and that GSU denied her application not on its merits but because of her race and sex. At some point as an undergraduate student, Grimes had asked her

4

professor, Samuel Todd, who was also the head of the Sports Management Program, what MAT score she would need for admission to that program. He told her he was unfamiliar with the MAT and its scoring scale. After she took the MAT and received her score of 386, she contacted Timothy Mack, the dean of GSU's College of Graduate Studies, and asked him what score she needed for provisional admission. According to Grimes, Mack told her that GSU's stated minimum requirement of a raw score of 36 was equivalent to a 380. From this, Grimes deduced that her score of 386, plus her 2.53 GPA, entitled her to provisional admission into the Sports Management Program.

On or about August 25, 2009, Grimes filed a complaint with the United States Department of Education, Office of Civil Rights ("OCR"). During OCR's investigation, the "Program Director," presumably Todd, and other "[u]niversity witnesses" told OCR that Grimes was not accepted for admission because she lacked significant work experience and her MAT score was too low. *See* Doc. 28-2 at 5. When asked about the MAT score specifically, Todd told OCR that most applicants did not take the MAT, and he was unfamiliar with MAT scoring. This statement was consistent with the previous statement Todd made to Grimes that he was unfamiliar with MAT scoring. For her part, Grimes submitted letters explaining, among other things, her MAT score and how she interpreted it. She

5

also confirmed for OCR that her work experience was limited to volunteering at two sporting events.

After a thorough investigation, on February 18, 2010, OCR concluded that no unlawful discrimination occurred. OCR found that Grimes's GPA satisfied the minimum required for provisional admittance, but her 386 MAT score was below the provisional admission cut-off. And although OCR identified three applicants who were admitted despite falling below *regular* admission requirements, OCR determined that those applicants were admitted *provisionally* after satisfying the minimum test score and GPA requirements. Those applicants also had significant experience working in the sports industry, which Grimes lacked. Grimes appealed to the Deputy Assistant Secretary for Enforcement of the OCR.

Grimes's appeal led OCR to conduct another investigation, during which OCR asked GSU's Director of Diversity Services, Gary Gawel, to clarify whether GSU's minimum requirement on the MAT—a "score [of] 44" for regular admission and a "36 MAT" for provisional admission, Doc. 44-5 at 54—referred to a raw score or percentile rank. Gawel forwarded the request to Todd, who stated in an email dated March 18, 2010 that "generally . . . a '36' is equivalent to a '380.'" Doc. 56-1 at 4. He did not directly address whether 36 referred to a raw score or percentile rank. After further investigation and interviews, OCR denied Grimes's appeal on December 17, 2012.

On December 7, 2012, Grimes filed a counseled complaint raising claims of race discrimination, sex discrimination, and retaliation.[4]  On the defendants' first motion to dismiss, the district court dismissed several claims on statute of limitations grounds, including her § 1981 claim based on GSU's refusal to admit her into the Sports Management Program.  Only Grimes's racial discrimination and retaliation claims under § 1981 survived.  The defendants then filed, with Grimes's consent and the court's leave, a second motion to dismiss.  On this motion, the district court dismissed all of Grimes's remaining claims except her § 1981 retaliation claim against Todd.

After discovery, Todd moved for summary judgment on the remaining retaliation claim under § 1981.  Relevant to this appeal, Grimes, now proceeding *pro se*, responded that, during OCR's investigation, Todd misrepresented to OCR that she had inadequate MAT scores and insufficient work experience for provisional admission into the Sports Management Program, and that these misrepresentations amounted to unlawful retaliation in violation of §1981.

The district court disagreed.  The court held that Grimes's filing of an OCR complaint constituted statutorily protected activity, but Grimes failed to show that Todd's actions were materially adverse.  In particular, the court concluded that

---

[4] Plaintiffs are not required to exhaust administrative remedies before bringing a § 1981 claim. *See Caldwell v. Nat'l Brewing Co.*, 443 F.2d 1044, 1046 (5th Cir. 1971).  Decisions of the former Fifth Circuit rendered prior to close of business on September 30, 1981, are binding on this Court. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

7

Todd made no false statements to OCR, and thus Grimes failed to establish a prima facie case of retaliation. The court further determined that if any of Todd's statements to OCR about MAT scores were false, Todd offered a legitimate, non-retaliatory reason for his statement: he was simply unfamiliar with MAT scoring. Finally, the court determined that Grimes failed to offer evidence of pretext. For these reasons, the district court granted Todd's motion for summary judgment and dismissed Grimes's remaining § 1981 retaliation claim. This appeal followed.

## II. DISCUSSION

On appeal, Grimes argues that the district court erred in (1) applying a two-year statute of limitations to her claim that GSU failed to admit her into a graduate program in violation of 42 U.S.C. § 1981 and (2) granting Todd's motion for summary judgment on her § 1981 retaliation claim. We consider each argument in turn.

## A. Statute of Limitations

We review *de novo* the interpretation and application of a statute of limitations. *Kipnis v. Bayerische Hypo-Und Vereinsbank, AG*, 784 F.3d 771, 778 (11th Cir. 2015). Grimes argues that GSU violated 42 U.S.C. § 1981 when, in August 2009, it declined to admit her into the Sports Management Program. Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts." 42 U.S.C.

§ 1981(a).  This section does not contain a statute of limitations.  *See* 42 U.S.C. § 1981.

Prior to 1991, we applied "the most appropriate or analogous state statute of limitations" to claims brought under § 1981.  *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 371 (2004).  Here, that would be Georgia's two-year statute of limitations for personal injury actions.  O.C.G.A. § 9-3-33; *see Hill v. Metro. Rapid Transit Auth.*, 841 F.2d 1533, 1545-46 (11th Cir. 1988).

Congress has since enacted 28 U.S.C. § 1658, which provides a four-year statute of limitations for civil actions arising under federal statutes enacted after December 1, 1990.  28 U.S.C. § 1658(a); *see also Jones*, 541 U.S at 371-72.  In 1991, Congress amended § 1981 to broaden the definition of the term "make and enforce contracts."  *Jones*, 541 U.S. at 373 (quoting 42 U.S.C. § 1981(b)).  Whereas prior to 1991 this phrase referred narrowly to "discrimination in the making and enforcement of contracts alone," *Patterson v. McLean Credit Union*, 491 U.S. 164, 176 (1989) (internal quotation marks omitted and alterations adopted), after the 1991 amendment, the statute also covered post-formation conduct, such as the imposition of discriminatory working conditions.  *See* 42 U.S.C. § 1981(b) (defining the phrase "make and enforce contracts" to include "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship"); *Jones*, 541 U.S. at 373.  Thus, we apply a four-year statute of

9

limitations to any § 1981 claim that is cognizable only because of the 1991 amendment and otherwise apply the analogous state statute of limitations. *Jones*, 541 U.S. at 382-83.

Here, the district court correctly concluded that Grimes's failure-to-admit claim fell within the pre-amendment version of § 1981. Grimes alleged that GSU denied her graduate admission; her claim challenged discrimination in the formation of a contract (for graduate admission) and thus fell squarely within the pre-amendment version of § 1981. *See Patterson*, 491 U.S. at 176. This claim therefore is subject to a two-year statute of limitations. *See Jones*, 541 U.S. at 382-83. Grimes filed this action on December 7, 2012, more than two years after the alleged denial of admission to the Sports Management Program in August 2009.[5] Accordingly, her § 1981 claim premised on this denial is time-barred.

## B. Summary Judgment

We review a district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the nonmoving party. *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1211 (11th Cir. 2008). Summary judgment is

---

[5] Grimes did not argue before the district court that the statute of limitations for her § 1981 failure-to-admit claim should be tolled during the pendency of her OCR appeal, and she does not raise that argument on appeal. We thus do not consider what, if any, affect her OCR appeal had on the running of the statute of limitations. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("This Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." (internal quotation marks omitted)); *Timson*, 518 F.3d at 874 (deeming abandoned an argument not briefed on appeal).

10

appropriate where the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). However, a "mere scintilla" of evidence in support of the non-moving party is insufficient to defeat a motion for summary judgment. *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) (internal quotation marks omitted).

Where, as here, the plaintiff lacks direct evidence of discrimination, her retaliation claim brought under § 1981 is analyzed under the *McDonnell Douglas* burden-shifting framework. *Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under that framework, the plaintiff must first establish a prima facie case of retaliation by showing that: (1) she engaged in statutorily protected activity, (2) she suffered a materially adverse action, and (3) there was some causal connection between the two events. *See id.* at 1307-08. If the plaintiff fails to establish a prima facie case, the inquiry ends and her claim fails. *See id.*; *see, e.g.*, *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) (affirming grant of summary judgment to the defendants because the plaintiff failed to establish a prima facie case of retaliation

11

under the Family Medical Leave Act, 29 U.S.C. § 2615(a)(2), and the Age

Discrimination in Employment Act, 29 U.S.C. § 623(d)).

The district court did not err in granting Todd's motion for summary

judgment because Grimes failed to show that she suffered a materially adverse

action, and thus she failed to establish a prima facie case of retaliation.  In the

retaliation context, a materially adverse action is one that "has a materially adverse

effect on the plaintiff."  *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008)

(Title VII retaliation claim).[6]  More specifically, an action is materially adverse if it

"well might have dissuaded a reasonable worker from making or supporting a

charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S.

53, 68 (2006) (internal quotation marks omitted) (Title VII).  "And normally petty

slights, minor annoyances, and simple lack of good manners will not create such

deterrence."  *Id.*

Grimes argues that Todd's misrepresentations to OCR during its

investigation constituted materially adverse actions.  We disagree.  Grimes first

points to Todd's statement that Grimes lacked sufficient work experience.  But as

the district court concluded, Grimes offered no evidence showing that the work

experience she described on her application was sufficient for provisional

---

[6] The elements required to establish retaliation claims under § 1981 are the same as those required for Title VII claims.  *See Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (applying the same three-part test to retaliation claims under § 1981 and Title VII).

admission under the circumstances or that Todd was aware of any additional work experience other than what she disclosed on her application.[7]  Because Grimes failed to show that Todd's statement about her work experience was false, she cannot rely on it to support a § 1981 retaliation claim.

Grimes next argues that Todd falsely told OCR that her MAT score was too low for provisional admission.  The evidence in the record shows that this statement was also true.  Grimes earned a 386 on the MAT which, according to Pearson, was equivalent to, at most, a 34 raw score and a 32nd percentile rank.  For provisional admission, GSU required at least a 36.  Whether the 36 refers to raw score or percentile rank, Grimes's MAT performance was below this minimum requirement.

Grimes contends, however, that GSU established its own conversion and scoring system for the MAT, under which Grimes's score of 386 satisfied minimum requirements for provisional admission.  This is merely supposition. Pearson's technical manual, which Grimes herself submitted with her summary judgment response, showed that Pearson structured, administered, and *scored* the MAT, while the schools simply determined how to use the MAT scores.  Doc. 56-1

---

[7] In her deposition, Grimes stated that, in addition to the volunteer work experience disclosed in her application materials, in the fall of 2008 she started a "sport[s] management startup company named Division 1 Boys," which involved mentoring at-risk student athletes. Doc. 44-4 at 22.  She confirmed, however, that she did not provide this information to GSU in support of her application, and she identified no evidence suggesting that Todd was aware of the startup when he told OCR that Grimes's work experience was inadequate.

at 15 (emphasis removed).  Given this evidence, Grimes would need to come forward with contrary evidence suggesting that GSU disregarded Pearson's scoring.  But Grimes points only to communications from Todd and Mack expressing their belief—which was inconsistent with Pearson's conversion table—that a 36 raw score was equivalent to a 380.  No reasonable jury could draw from these communications anything more than Todd's and Mack's unfamiliarity with Pearson's scaled scoring calculations.  Indeed, Todd confirmed his lack of understanding on at least two occasions when he stated that, due to its infrequent submission, he was unfamiliar with the MAT test and its change in scoring.  The record simply does not support the inference that Grimes's scaled score of 386 on the MAT was sufficient to satisfy GSU's requirement that she earn at least a 36 to be considered for provisional admittance.  Because Grimes cannot prove that Todd's statement to OCR regarding her MAT performance was false, this statement cannot support a § 1981 retaliation claim.

Finally, Grimes argues about two additional statements Todd made, neither of which was raised before the district court as evidence of retaliation.  According to Grimes, Todd falsely told OCR she had been "unruly" in her undergraduate program.  Neither party addressed this statement on summary judgment, and thus the district court expressly declined to consider any argument based on it.  Grimes also points to a statement Todd made to OCR indicating that she had been accused

14

of plagiarism.  Although Grimes disagreed that she committed plagiarism, she never argued in the district court that this statement supported her § 1981 retaliation claim.  We decline to consider Grimes's arguments raised for the first time on appeal.[8]  *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).

Grimes identifies no other evidence to support her contention that she suffered a materially adverse action.  She therefore failed to establish a prima facie case of retaliation, and we need not consider whether Todd offered legitimate, non-discriminatory reasons for his conduct and whether those reasons were pretextual.  The district court did not err in dismissing her § 1981 retaliation claim against Todd on summary judgment.

### III. CONCLUSION

Based on the foregoing, upon review of the record and consideration of the parties' briefs, we affirm.

**AFFIRMED.**

---

[8] Even if we considered Todd's statements to OCR that Grimes was unruly and had been accused of plagiarism, we would affirm nevertheless.  Grimes provided no evidence that these statements were materially false.  In fact, she confirmed she had been accused of plagiarism, although she explained that she had simply failed to include a citation in a paper she wrote.  But even assuming these statements were false, Grimes offered no evidence that they factored into OCR's decision in any way.  Instead, the undisputed evidence showed that OCR concluded Grimes had been rejected from the program based solely on her application, including her insufficient MAT score and lack of work experience in the industry.  In sum, Todd's statements that Grimes was unruly or had been accused of plagiarism simply do not amount to materially adverse action.