[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-14108
Non-Argument Calendar
_____

D.C. Docket No. 2:18-cv-00392-KOB

PAPE TAMBA,

Plaintiff-Counter Defendant-Appellant,

versus

PUBLIX SUPER MARKETS, INC.,

Defendant-Counter Claimant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(November 20, 2020)

Before GRANT, LUCK, and LAGOA, Circuit Judges.

LAGOA, Circuit Judge:

Pape Tamba appeals the district court's order granting summary judgment in favor of Publix Super Markets, Inc. on his workplace discrimination claim and Publix's breach of contract counterclaim.  For the following reasons, we affirm the district court's order granting summary judgment.

## I.    FACTUAL AND PROCEDURAL HISTORY

Tamba, an African-American man born in Senegal, initially worked as a forklift operator for Publix in Lakeland, Florida.  In 2016, Tamba applied for a "Truck Driver/Truck Driver Trainee" opening with Publix at its warehouse and distribution center in McCalla, Alabama.  Although the truck driver and truck driver trainee positions were grouped together in the application, each position entails different duties, responsibilities, and compensation.  Truck drivers make outbound deliveries from Publix's McCalla facility to its stores.  Truck driver trainees, by comparison, perform "spotter duties" and move and maintain tractors and trailers within the McCalla facility.  When a truck driver position opens, a truck driver trainee usually fills it.  Generally, Publix pays its truck drivers $21.85 per hour and its truck driver trainees $16.79 per hour.

Publix accepted Tamba's application, and both parties signed a Job Offer Acceptance and Commitment Form for Truck Drivers and Truck Driver Trainees ("Commitment Form").  The Commitment Form stated that Tamba was hired as a truck driver—not a truck driver trainee—even though Publix intended to hire Tamba

as a truck driver trainee. The parties also signed a Relocation Package Repayment Agreement ("Relocation Agreement"). Under the Relocation Agreement, Publix agreed to compensate Tamba for his relocation costs in moving to McCalla, Alabama. Tamba, in turn, agreed that if he was terminated by Publix for any reason within one year, he would reimburse his relocation benefits. Notably, the Relocation Agreement identified Tamba as a truck driver trainee. Tamba's relocation benefits ultimately totaled $15,246.57.

After relocating to McCalla, Tamba allegedly experienced discrimination based on his race and national origin. According to Tamba, at an April 2017 staff meeting, Publix employees "began laughing at [his] accent" and repeatedly asked Tamba "where [he] was from." Tamba also alleged that Paul Chambers, the dispatch superintendent, asked him how he became a truck driver when "you have to be at least ten years in [the] Publix warehouse" to become a truck driver.

Around this time, Publix became aware that Tamba was erroneously classified and compensated as a truck driver even though Tamba had only trained, visited store locations, and performed spotter duties during his McCalla tenure. Accordingly, Publix reduced Tamba's compensation to a truck driver trainee wage. Tamba complained about his reduced wage and discriminatory treatment to Publix's Human Resources department.

On June 8, 2017, Tamba caused an accident at the McCalla facility. As evidenced on surveillance footage, Tamba backed his tractor and trailer into a return center dock at 11:33 p.m. He shut off his tractor's engine, exited the tractor, and went into the return center. Because Tamba forgot to set the parking brake before exiting the tractor, his tractor and trailer rolled forward and hit another trailer, causing damage to both trailers. A few minutes later, Tamba exited the return center and observed the damage caused by the accident. Tamba then backed up his trailer and tractor into the loading dock, further inspected the damage, entered the other tractor, and drove that tractor to another location in the facility. As the district court observed, after approximately forty minutes, "Tamba drove his tractor back to the damaged trailer, realigned the damaged trailer, and backed it into place. The relevant surveillance footage ends there."

Later in his shift, Tamba reported the incident to Deonta Harvard, the return center lead. In an incident report, Tamba stated "I was doing the post trip inspection and I found damage on the front and [right] side of the tractor. I may [have] hit something or I was hit by someone. I immediately advise[d] the return center lead person." Harvard informed Godfrey Saunders, the return center manager, of the accident in an email, stating that when Tamba "went outside to inspect his [tractor] and noticed that the front was damaged that wasn't there at the beginning of the shift. [Tamba] noted that he did not know his truck was damaged or when it actually

4

happened."  Another supervisor informed Saunders that Harvard "said that [Tamba] was doing his post trip inspection when he noticed the damage.  Tamba said that he didn't notice anything when he did his pre-trip inspection, so it must have happened on his shift. . . . He didn't notice anything when coming back out."

According to its employee handbook, Publix does not accept "[d]ishonesty of any kind."  In fact, dishonesty alone may lead to employment termination.  On June 9, 2017, Tamba met with Chambers and Saunders.  After management reviewed the reports and surveillance footage, Tamba's employment was terminated for dishonesty.  Although his employment was terminated within one year of relocating to McCalla, Tamba did not reimburse his relocation benefits.

Tamba sued Publix for race and national origin discrimination under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.[1]  Tamba alleged that Publix held him to a higher standard than white employees who had similar accidents and had completed accident reports.  Tamba also alleged that Publix employees mocked his accent and asked where he was from, "reflecting that he was viewed as 'different' or 'other' than the white non-immigrant employees."  Publix countersued Tamba

---

[1] Tamba also sued Publix for retaliation and breach of contract, but abandoned these claims below.  We therefore do not address them.

5

and alleged that he breached the Relocation Agreement by failing to reimburse his relocation benefits.[2]

Publix moved for summary judgment. In relevant part, it argued that Tamba could not make out a prima facie case of discrimination because Tamba could not identify similarly situated employees outside his protected class who were treated more favorably by Publix. Publix further argued that Tamba was terminated for dishonesty, which is a legitimate, non-discriminatory reason for employment termination. Although Tamba argued that this was pretext, Publix contended that Tamba could not provide any evidence that he did not behave dishonestly or prove that Publix did not rely on a good faith belief that he behaved dishonestly. As to its breach of contract counterclaim, Publix argued that it had a valid contract with Tamba, that Tamba was terminated within a year of receiving his relocation benefits, and that after being terminated, Tamba never reimbursed Publix the $15,246.57 of relocation benefits. As such, Publix asserted that, as a matter of law, Tamba breached the Relocation Agreement.

In response, Tamba argued that summary judgment was inappropriate. In relevant part, Tamba asserted that he could identify two comparators outside his protected class that were treated more favorably: employees XX and YY. Tamba

---

[2] Publix also countersued Tamba for unjust enrichment. The facts of the unjust enrichment counterclaim are not relevant to this appeal, as the district court dismissed the counterclaim for lack of subject matter jurisdiction.

contended that XX, a white non-immigrant employee, damaged a Publix trailer but failed to file an incident report. Tamba argued that "[p]resumably XX went to work the next day despite his failure to report." Despite the property damage and failure to file an incident report, Tamba noted, the record did not demonstrate that management inspected surveillance footage of XX's accident. Instead, XX's employment continued, while Tamba's employment was terminated, which, according to Tamba, evidenced discriminatory treatment. Tamba also identified YY, an African-American non-immigrant employee, who also damaged a trailer. Similar to XX, Tamba contended that the record did not show that management inspected surveillance footage of YY's accident or that YY was "charged" with dishonesty. Thus, Tamba argued that because XX and YY were sufficient comparators, he could make out a prima facie case of discrimination.

Additionally, Tamba claimed that Publix's purported justification for his termination was pretextual. As proof of pretext, he argued that Chambers and Saunders provided different reasons for his termination, noting that Chambers testified that Tamba was terminated because he failed to report the accident while Saunders testified that Tamba was terminated because Tamba stated in his incident report that he "may" have hit something. Tamba further argued—broadly and without record citations—that Publix's purported reason for his termination was pretextual because Publix had "opted to demote a dishonest person" or overlook

"non-immigrant white employees' failure to write any incident reports after damaging Publix property." He also asserted that Harvard, an African-American non-immigrant, was allegedly abusive to employees but was only suspended—not terminated—by Publix. Because Tamba's employment was terminated, but Harvard's employment was only suspended, Tamba argued that Publix engaged in discriminatory conduct. As for Publix's breach of contract counterclaim, Tamba argued that because Publix failed to hire him as a truck driver under the Commitment Form, Tamba need not perform under the Relocation Agreement.

On September 20, 2019, the district court granted summary judgment in favor of Publix on Tamba's discrimination claim and Publix's breach of contract counterclaim. In addressing Tamba's discrimination claim, the district court determined that he did not state a prima facie case of discrimination nor offer circumstantial evidence that Publix terminated his employment because of race or national origin discrimination. Notably, the district court concluded that XX and YY were not proper comparators. As to XX, the district court explained the record only demonstrated "that XX was somehow associated with a damaged" a trailer and noted "[t]he evidence regarding XX end[ed] there." The district court clarified that Tamba was fired for dishonesty, not for damaging property. Therefore, because Tamba did not present evidence that XX acted dishonestly, the district court determined that XX could not serve as a proper comparator. As for YY, the district

8

court concluded that the record did not contain any evidence of this employee. Therefore, the district court ruled that Tamba did not present a prima facie case of discrimination.

The district court then determined that Tamba did not present any circumstantial evidence that Publix terminated him because of race or national origin discrimination. In fact, the district court stated that Tamba did not present any evidence disputing that he "was dishonest or, at the very least, . . . that Publix reasonably determined that [he] was dishonest." Accordingly, the district court granted summary judgment in favor of Publix on the discrimination claim.

As for Publix's breach of contract counterclaim, the district court stated that the Relocation Agreement was a valid contract and that, under the agreement, Tamba was required to reimburse Publix for the relocation benefits if he was terminated within the year. Although Tamba argued that Publix breached the Commitment Form, the district court concluded that even if Publix breached the Commitment Form, "no evidence shows how Publix's breach of the Commitment Form would affect Mr. Tamba's obligations under the [Relocation] Agreement." Therefore, the district court granted summary judgment in favor of Publix on its breach of contract counterclaim. Tamba filed a timely notice of appeal.

## II.    STANDARD OF REVIEW

9

"We review the district court's grant of summary judgment *de novo*." *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1288 (11th Cir. 2003).

## III.    ANALYSIS

On appeal, Tamba raises two issues: (1) whether the district court erred in granting summary judgment in favor of Publix on Tamba's discrimination claim; and (2) whether the district court erred in granting summary judgment in favor of Publix on its breach of contract counterclaim.  We discuss each issue in turn.

### A.    Race and National Origin Discrimination Claim

Title VII prohibits an employer from discharging or otherwise discriminating against an employee based on the employee's "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).   Similarly, 42 U.S.C. § 1981 "prohibits intentional race discrimination in the making and enforcing of . . . private contracts, including employment contracts."  *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 472 (11th Cir. 1999).  "The test for intentional discrimination in suits under § 1981 is the same as the formulation used in Title VII discriminatory treatment cases."  *Id.*

To survive summary judgment on a discrimination claim based on circumstantial evidence, an employee generally must satisfy the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  *Maynard*, 342 F.3d at 1289.  Under this framework, the employee has the

initial burden to establish a prima facie case of discrimination by proving that: (1) he is a member of a protected class; (2) he was qualified for the job; (3) he suffered an adverse employment action; and (4) "similarly situated employees outside of the protected class were treated differently." *Holland v. Gee*, 677 F.3d 1047, 1055 (11th Cir. 2012). Under the similarly situated requirement, the employee must prove that he and his comparators are "similarly situated in all material respects." *Lewis v. City of Union City*, 918 F.3d 1213, 1227–28 (11th Cir. 2019) (en banc). This means that the employee and his comparators must have been engaged in the same basic conduct and subjected to the same work rules. *Id.* For example, if an employee was terminated for violating an employer's dishonesty policy, the employee's similarly situated comparators must have been found to have violated the employer's dishonesty policy as well. *See, e.g.*, *Willis v. Publix Super Markets, Inc.*, 619 F. App'x 960, 962 (11th Cir. 2015).

If the employee makes out his prima facie case of discrimination, the burden shifts to the employer to proffer a "legitimate, nondiscriminatory reason for its decision." *Holland*, 677 F.3d at 1055 (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004)). "If such reasons are identified, [the employee] then bears the ultimate burden of proving them to be a pretext for" discrimination. *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999). In cases were an employee was discharged for violating a work rule, pretext may be

11

established when the employee "submits evidence (1) that [he] did not violate the cited work rule, or (2) that if [he] did violate the rule, other employees outside the protected class, who engaged in similar acts, were not similarly treated." *Id.* at 1363.

Aside from the *McDonnell Douglas* framework, however, an employee can still survive summary judgment by presenting "circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). "A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" *Id.* (footnote omitted) (quoting *Silverman v. Bd. of Educ.*, 637 F.3d 729, 734 (7th Cir. 2011)). The defendant could point to "(1) suspicious timing, ambiguous statements . . . , and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) (quotation marks omitted and alteration in original).

Tamba argues that the district court erred in granting summary judgment on his race and national origin discrimination claim for several reasons. First, he argues that he established a prima facie case of race and national origin discrimination,

12

asserting that XX, a white non-immigrant, is a proper comparator under the *McDonnell Douglas* framework. Tamba claims that XX similarly damaged property but failed to file an incident report, while Tamba did file a report. Tamba notes that the record does not show Publix investigated surveillance footage of XX's accident and that XX was not terminated by Publix. Second, Tamba argues that Publix's reason for terminating his employment was pretextual. He argues—broadly and without record citations—that while dishonesty is a legitimate reason for employment termination, at times Publix opted to demote dishonest persons or overlook white non-immigrant employees who failed to complete incident reports after damaging Publix property. He also argues that a jury should determine whether he acted dishonestly and whether Publix's proffered reason for his termination is valid. And third, stepping aside from *McDonnell Douglas*, Tamba contends that circumstantial evidence precludes summary judgment. He argues that Harvard, an African-American non-immigrant, was abusive to employees and was suspended, not terminated. Because Tamba was terminated, not suspended, he argues that this shows that Publix treated Harvard more favorably. Tamba also "suspects" that Chambers was the ultimate decisionmaker and intentionally discriminated against him.

We disagree with Tamba's arguments. First, Tamba has not established a prima facie case of discrimination because he cannot identify similarly situated

13

comparators. *See Lewis*, 918 F.3d at 1227–28.  Tamba and XX are not similarly situated in all material respects.  The record evidence only demonstrates that Tamba—and not XX—was terminated for dishonesty, not for damaging property. Moreover, a review of the record shows that XX was found to be "[n]ot at fault" for his property damage while Tamba was at fault for his property damage.  Crucially, Tamba needed but failed to prove that XX was also disciplined for dishonesty.  *See Willis*, 619 F. App'x at 962.  Accordingly, they were not proper comparators. Because Tamba failed to prove this, he cannot establish a prima facie case of discrimination and summary judgment was properly granted.

Second, even if Tamba could establish a prima facie case of discrimination, he cannot establish that Publix's purported reason for his employment termination was pretextual.  Tamba failed to submit any evidence that he "did not violate" Publix's dishonesty rule or that "other employees outside [his] protected class . . . engaged in similar acts" but "were not similarly treated."  *See Damon*, 196 F.3d at 1363.  Accordingly, Tamba cannot establish that Publix's proffered reason for his termination was pretextual.

And third, Tamba failed to present circumstantial evidence of discrimination to overcome summary judgment.  Tamba's argument that Harvard's misconduct and suspension is circumstantial evidence is unavailing as Harvard's alleged misconduct was abuse of an employee and an ethical violation.  Moreover, Tamba failed to

14

present evidence in the record demonstrating that this was systemically better treatment or pretext. *Lewis*, 934 F.3d at 1185. Additionally, Tamba's mere suspicion that Chambers is the ultimate decisionmaker also fails to present a "convincing mosaic" that Publix intentionally discriminated against Tamba. *See Smith*, 644 F.3d at 1328. While Tamba "suspects" that Chambers was involved, he fails to point to anything in the record that would support a reasonable inference that Chambers was the true decisionmaker. Tamba failed to show "(1) suspicious timing, ambiguous statements . . . , and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis*, 934 F.3d at 1185. Therefore, the district court properly granted summary judgment in favor of Publix on Tamba's discrimination claim.

### B.     Breach of Contract Claim

We now turn to Publix's breach of contract counterclaim. Alabama and Florida law share similar elements of a breach of contract claim. To establish a breach of contract claim, a party must show: (1) the existence of a contract; (2) a breach of that contract; and (3) damages. *Compare S. Med. Health Sys., Inc. v. Vaughn*, 669 So. 2d 98, 99 (Ala. 1995), *with Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. Dist. Ct. App. 2006).

Tamba argues that the district court erred in granting summary judgment by largely echoing the argument he made before the district court, i.e., the Relocation Agreement and Commitment Form should be read together, and because Publix failed to perform under the Commitment Form, Tamba should not be forced to perform under the Relocation Agreement. However, Tamba also advances arguments for the first time on appeal claiming that he was misled into signing the documents and that a valid contract between the parties might not have been formed.

We are not persuaded by Tamba's arguments. First, we note our longstanding precedent holds that a party cannot raise an argument for the first time on appeal. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004). Thus, we decline to consider Tamba's arguments raised for the first time on appeal— that he was misled into signing the documents and that a valid contract might not have been formed. *See id.*

Second, after reviewing the district court's summary judgment order, we cannot find a genuine issue of material fact as to parties' obligations under the Relocation Agreement and Commitment Form. We agree with the district court that even if Publix failed to perform under the Commitment Form, that failure to perform did not affect Tamba's obligations under the separate Relocation Agreement. The record makes clear that Publix provided $15,246.57 in relocation benefits to Tamba, that Tamba was fired within a year of relocating to McCalla, and that Tamba did not

16

reimburse Publix.  Accordingly, because no genuine issue of material fact exists as to Publix's breach of contract counterclaim, we affirm the district court's grant of summary judgment in favor of Publix on the claim.

## IV.    CONCLUSION

For the foregoing reasons, we affirm the district court's order granting summary judgment in favor of Publix on both the discrimination claims and the breach of contract counterclaim.

**AFFIRMED.**